Roy E. MAYNARD, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 1114.

United States District Court
S. D. of West Virginia,
at Huntington.

Oct. 19, 1962.

Harry F. Thompson, Jr., Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under 42 U.S.C. § 205(g) of the Social Security Act, as amended (42 U.S.C.A. § 405(g)), by the plaintiff, Roy E. Maynard, against the Secretary of Health, Education, and Welfare, to obtain judicial review of a final decision of the Secretary discontinuing plaintiff's period of disability and disallowing his claim for disability insurance benefits, pursuant to sections 216(i), 42 U.S.C.A. § 416(i), and 223 (42 U.S.C.A. § 423), respectively, of the

Social Security Act, as amended. The jurisdiction of this court is limited to a determination of whether that decision was based on substantial evidence. The burden of proving a disability is upon the plaintiff, and the finding of the Secretary is conclusive upon a reviewing court if supported by substantial evidence. 42 U.S.C.A. § 405(g).

The Act, 42 U.S.C.A. § 416(i), provides for eliminating from a person's earning record the period during which he was under a "disability" in computing his average monthly wage upon which the amount of his benefit is based. A discussion of the elements of this statutory disability is contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159.

Plaintiff filed an application for a period of disability on June 6, 1958. This application was approved January 10, 1959, and a period of disability was established beginning November 8, 1957, as applied for. The plaintiff was then age 40. An August 24, 1960, it was determined that plaintiff was able to engage in substantial gainful activity, and his period of disability was ended as of October 1, 1959.

Plaintiff filed application for disability insurance benefits on October 4, 1960. Following administrative denials, plaintiff requested a hearing at which the hearing examiner determined that plaintiff was no longer under disability, and upon denial of plaintiff's request for review by the Appeals Council of the Social Security Administration, the hearing examiner's decision became the final decision of the Secretary of Health, Education and Welfare.

Under the Social Security Act,[1] and the facts of this case, plaintiff must either show that he was disabled in October, 1959, and has remained disabled, or that he became disabled during the effective date of his application under Section 223(b) (2), no later than March 1, 1961, the last date during which his application of October 4, 1960, could be effective.

Plaintiff was born February 22, 1917. He went to school to the sixth grade. After his discharge from military service he took a course in automobile mechanics under the "G.I.Bill." His principal source of income up to the time he was injured was as a truck driver. On November 8, 1957, plaintiff was in an automobile accident wherein he suffered a compound comminuted fracture of the right heel, compound comminuted fracture of the kneecap, with resulting partial removal of the kneecap and rupture of the quadriceps tendon, posterior displacement of the breastbone, multiple lacerations, and cerebral concussion. Following this accident, the period of disability was granted as mentioned above.

On June 4, 1959, he was examined by the Veterans Administration for disability. Except for the injury to the right

---

1. Section 216(i) (2) [42 U.S.C.A. § 416 (i) (2)] states, "A period of disability shall end with the close of the last day of the month preceding * * * the third month following the month in which the disability ceases."

Section 223(a) (1) (ii) states that an individual shall be entitled to a disability insurance benefit:

" * * * for each month beginning with the first month during all of which he is under a disability and in which he becomes so entitled to such insurance benefits, * * * if he * * * had a period of disability (as defined in section 416(i) of this title which ceased, within the 60-month period preceding the first month in which he is under such * * *."

Section 223(b) [42 U.S.C.A. § 423(b)] states:

"No application for disability insurance benefits shall be accepted as a valid application for purposes of this section * * * (2) in any case in which clause (ii) of paragraph (1) of subsection (a) of this section is applicable, if it is filed more than six months before the first month for which the applicant becomes entitled to such benefits; and any application filed within such * * * six months' period, * * * shall be deemed to have been filed in such first month."

The Secretary's Regulations dealing with disability may be found in Regulations No. 4, section 404.1501 et seq., as published in 25 Federal Register 8100, August 24, 1960.

leg with deformity at the knee and atrophy in the lower third of the leg, all findings were normal. In July, 1958, the injuries to the chest, nose and face had healed. Dr. J. Hunter Smith reported that disability and the necessity for rehabilitation were attributed entirely to the condition of his right leg. A reading of the record would indicate that the period of disability was established in order to give time to evaluate the permanent residuals. In April, 1959, he underwent a successful operation for a fusion of the right ankle joint. Prior to May, 1958, plaintiff had been admitted to and was receiving training in radio and television repair from vocational rehabilitation. Dr. Salton was of the opinion that after a two or three months period of convalescence following his operation on April 1, his vocational rehabilitation training could be resumed.

In an undated letter, Dr. Russell A. Salton, a surgeon and Director of the Williamson Memorial Hospital, who had handled plaintiff's injuries from the beginning, and who had operated on him, stated that plaintiff's "present disability" was referable to the right leg and that the chest injury was "well" with no residuals. Dr. Salton last saw plaintiff on October 1, 1959, when he had a "stiff right ankle" as a result of the fusion, and also had some quadriceps atrophy, which "detracts from the function of the right leg." The doctor further reported "At that time, he was working without the aid of crutches, and the quadriceps function was improving as compared to previous examinations. His disability then would consist of permanent stiffness of the right ankle joint and some loss of strength with the leg as a whole, due to this quadriceps atrophy." Dr. Salton encouraged the plaintiff to contact the Division of Vocational Rehabilitation for further job training and placement. These findings were confirmed by X-rays. On September 29, 1959, Dr. Salton wrote that plaintiff's fusion had healed well and that he was not back to full weight bearing; and that plaintiff had reached maximal improvement, except for persistent atrophy of the quadriceps muscle, which would improve with time.

Plaintiff was examined on November 19, 1959, by Dr. Harold H. Kuhn, who stated that plaintiff's condition was static; that he could not do work of a heavy physical nature; but, because of age, could be referred to the Division of Vocational Rehabilitation for training.

In another letter from Dr. Salton, dated June 14, 1960, the attending surgeon described plaintiff's disability as consisting of a permanent stiffness of the right ankle joint and some loss of strength in the leg as a whole due to quadriceps atrophy; and that plaintiff had again been encouraged to see the Division of Vocational Rehabilitation for further job training and placement. A similar letter was written by Dr. Salton under date of November 16, 1960.

Dr. J. E. Johnson and Dr. R. G. Warren, general practitioners, examined plaintiff. The Examiner gave little weight to their testimony because they examined plaintiff only once; their "reports reflect superficial examinations and they include almost no objective findings, particularly X-rays." Their reports made in May, 1961, express the opinion that plaintiff was totally and permanently disabled for any kind of manual labor.

At the hearing plaintiff admitted that he was able to sit "and do table work with hands." He had been admitted to the training school, found suitable for radio and television work, but refused to return to finish his fourteen-month course after six weeks of training in this field, although Dr. Salton and Dr. Kuhn both recommended that he do so. At the hearing, the Examiner stated:

"Well, in any case, Mr. Maynard, I think the proper thing for you to do is to immediately contact Vocational Rehabilitation and advise them just what your situation is now —that you have returned to West Virginia and that you are ready and prepared to undergo further training in any direction which they suggest. Of course, if you feel that

you don't have the background for radio and TV work, I would say so to the counselor and see what his reaction is. They are pretty careful, as I said before, on the type of training that they suggest."

 Plaintiff has not yet returned for vocational training and placement. Upon this record I think that there was substantial evidence to support the finding of the Secretary that plaintiff was not entitled to a continuation of his period of disability or to disability insurance benefits.

Affirmed.