Ethel TAYLOR, Plaintiff,

v.

Abraham RIBICOFF, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 1072.

United States District Court
S. D. West Virginia,
at Huntington.

April 19, 1962.

Henry L. Max and Harry F. Thompson, Jr., Huntington, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under 42 U.S.C.A. § 405(g) of the Social Security Act to review a final decision of the Secretary of Health, Education and Welfare. Plaintiff seeks to establish a period of disability under 42 U.S.C.A. § 416(i) and a right to disability insurance benefits under 42 U.S.C.A. § 423. The final decision of the Secretary was that plaintiff had failed to carry her burden of proof in establishing these elements, and the jurisdiction of this court is limited to a determination of whether that decision was based on substantial evidence. 42 U.S.C.A. § 405(g). The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C.N.D.W. Va., 178 F.Supp. 791.

The Act, 42 U.S.C.A. § 416(i) provides for eliminating from a person's earning record the period during which he was under a "disability" in computing his average monthly wage upon which the amount of his benefit is based. A discussion of the elements of this statutory disability is contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159. For an individual to be eligible for the establishment of a period of disability and for disability insurance benefits, the Act requires him (besides being under a "disability" as defined) to have met the spe-

cial "insured status" contained therein. With respect to this plaintiff, the special insured status requirement was that she must have had a continuous "disability" (for not less than six continuous calendar months but still continuing indefinitely at the time of the filing of her application) which began when she had 20 quarters of coverage (as defined in 42 U.S.C.A. § 413) in the 40 quarter period, ending with the first quarter of disability. Plaintiff last satisfied this quarters of coverage requirement in the quarter ending September 30, 1958.

Plaintiff filed an application for disability insurance benefits on October 7, 1958, and an application to establish a period of disability on October 17, 1958, alleging that she became unable to work because of rheumatism on April 22, 1957. The Bureau of Old-Age and Survivors Insurance denied plaintiff's claim on January 15, 1959 and, upon plaintiff's request for reconsideration, affirmed its denial on February 15, 1960. Plaintiff then requested a hearing before a hearing examiner and such a hearing was held on February 16, 1961. The examiner rendered his decision on February 28, 1961, and found that plaintiff, since April 22, 1957 (or commencing at any time thereafter while plaintiff had the special insured status for a disability determination) and continuing to October 7, 1958, the date of application, did not have impairments of sufficient severity to preclude her from engaging in a substantial gainful activity. The Appeals Council, on April 11, 1961, denied plaintiff's request for review of the examiner's decision whereupon that decision became the "final decision" of the Secretary subject to the present judicial review.

The issue in this case is whether there is substantial evidence in the record to support the Secretary's decision that the plaintiff, having the burden of proof, failed to establish her right to a period of disability and disability benefits; that she failed to prove that since April 22, 1957 (or commencing at any time thereafter while she had the special insured status required) and continuing to October 7, 1958, the date of her application, she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which could be expected to result in death or be of long continued and indefinite duration.

■ A summary of the medical evidence reveals that plaintiff now suffers from several impairments which include osteoarthritis, a colloid goiter, diverticuli of the colon and a depressive reaction. The last two of these impairments were not diagnosed until a year after plaintiff ceased to meet the earnings requirements of the Act, and the evidence is insufficient to show that they are of the disabling severity required by the Act. Furthermore, any impairment which had its onset or became disabling after an individual last met the earnings requirements, may not be the basis for a favorable finding.

Plaintiff has had the goiter for many years, but this did not interfere with her activities or affect her ability to work. The condition is evidently remediable by surgery, and plaintiff indicated at the hearing that it was not bothering her. This condition is certainly not disabling within the meaning of the Act.

■ Plaintiff's most significant impairment appears to be the arthritic condition. On October 9, 1958, Dr. H. D. Hatfield examined plaintiff and stated that her present condition was diffused arthritis involving all joints of the body. He found enlarged joints in the fingers, toe joints, right ankle joints, with considerable involvement of the knees. There was also joint involvement in the sacral region extending up into the cervical region of the spine. The condition was reported not to be static, but slowly growing worse, and plaintiff was said to be " * * * unable to work, wholly disabled to do any kind of work." In response to an inquiry as to when the present illness occurred, he wrote "about 1955", but in response to an inquiry as to whether there was a previous history of this illness, he answered "no."

Dr. W. B. MacCracken saw plaintiff in orthopedic consultation on December 1, 1958. The clinical examination revealed a woman of 57 years, apparently in good general health. The distal interphalangeal joints of her fingers showed a typical deformity of advanced osteoarthritis, but no other joints showed any evidence of arthritis involvement. No treatment was indicated for plaintiff, and Dr. MacCracken believed that she was unable to carry out work requiring any manual dexterity.

Dr. Lawrence B. Gang saw plaintiff on June 24, 1959. The doctor found that she demonstrated poor posture, with a dorsal kyphosis and lumbar lordosis. She was found to have a weak back, and could not sit up from a recumbent position without turning. Her hands showed osteoarthritis of the terminal joints. The doctor concluded that plaintiff was suitable for sedentary work only, not requiring skilled work with her hands due to the arthritis.

An internist consultative examination was carried out by Dr. Rowland Burns on September 14, 1959. On plaintiff's arthritic condition, his physical examination revealed osteoarthritic changes of the hands with Herberden's nodes. Examination of the back showed a smooth dorsal kyphosis and lumbar lordosis. There was a moderate dorsal kyphosis with osteoarthritic spurs demonstrable in the dorsal vertebrae, and the doctor made a finding of moderately severe osteoarthritis.

The X-rays made by Dr. Cole D. Genge on September 15, 1959, at the request of Dr. Burns, prompted findings of hypertrophic or possibly mixed arthritis.

A hospital report of December 22, 1960, made what was designated as a questionable finding of rheumatoid arthritis.

At the hearing before the hearing examiner, plaintiff testified with respect to her work history that she was first employed as a machine operator cutting cardboard packing cartons in a glass factory for about two years, and thereafter worked as a power sewing machine operator in garment factories from about 1941 to April 1957, at which time she allegedly was laid off by her employer because she was unable to keep up with her work. Plaintiff alleged that her inability to do her work at this time resulted from leg and back pains in connection with her rheumatic condition. Further testimony by the plaintiff indicated that both the unemployment compensation agency and a vocational rehabilitation agency had offered her jobs doing general housework, but that she had refused them because generally she thought she did not have the necessary experience to do such work. In one instance when she had checked into one of these job offers, she had found that she would have been required to do a lot of strenuous work, which she felt she was unable to perform. Plaintiff also testified that some time after the discontinuance of her unemployment benefits, she had applied for financial help at the West Virginia Department of Public Assistance but was turned down following a physical examination because it was determined that she was capable of doing light work.

In her applications plaintiff described rheumatism as the basis for her claim of disability under the Act and the medical evidence indicates that plaintiff has an arthritic condition. Although Dr. Hatfield made a diagnosis of acute diffused arthritis in the multiple joints, his only supportive finding was "enlarged joints" and his report contains no findings relative to the extent of any physical impairment, bone, tissue, or joint damage or limitation of motion stemming from the arthritis. In fact, Dr. Hatfield specifically noted that no X-rays were taken in connection with his investigation of plaintiff's arthritic troubles and he stated that plaintiff was ambulatory. Dr. MacCracken found that as of December, 1958, sometime after plaintiff last satisfied the special insured status requirements relative to her applications, plaintiff suffered only from advanced osteoarthritis of the fingers and he stated

that none of the other joints showed any evidence of arthritis. In addition, Dr. MacCracken concluded that no treatment was indicated and he expressed the view that the plaintiff would be limited only in carrying out work requiring manual dexterity. Plaintiff saw Dr. MacCracken specifically in orthopedic consultation. Dr. Hatfield had reported that plaintiff's condition was slowly growing worse. Yet, when she was examined less than two months later by an orthopedic man, the arthritic condition was limited to her hands. On June 24, 1959, Dr. Gang also restricted his finding of osteoarthritis to the terminal joints of the hands and stated that plaintiff could perform sedentary work not requiring skilled work with her hands. Dr. Burns made a diagnosis of moderately severe osteoarthritis of the hands and central spine based upon his own fluoroscopic findings and the X-ray studies of Dr. Genge. The Cabell Huntington Hospital Clinic reported that as of December, 1960, there was no edema or deformities of the extremities and made a diagnosis of questionable rheumatoid arthritis.

█ Thus, whereas it might be a reasonable inference from Dr. Hatfield's report of October, 1958, that plaintiff's condition existed in September of 1958 (i. e. sometime within the period of coverage), reasonable men could validly draw different inferences as to the severity of the condition in view of the later medical and clinical evidence that conflicts with his findings. In short, giving the evidence the most liberal interpretation in favor of plaintiff, there is an indication that she had arthritis within the period of coverage, with substantial conflict as to the extent, if any, of such condition, or of disability therefrom within the period of coverage. Where such a conflict exists the hearing examiner, as the trier of fact, is empowered to resolve such a conflict. Butler v. Folsom, D.C.W.D.Ark., 167 F.Supp. 684. The hearing examiner resolved this conflict against plaintiff. The conflict resolved, the evidence shows that plaintiff's arthritic condition was one of moderate severity which primarily affected her hands and which imposed no significant limitation of motion. The only apparent restriction upon plaintiff's ability to work suggested by the medical evidence is with respect to jobs requiring manual dexterity. It should be remembered that in order to qualify for disability benefits under the Act, a claimant must prove an inability to engage in any type of substantial gainful activity based on claimant's age, education and prior experience. Plaintiff's impairment would not prevent her from doing various jobs involving inspecting, light assembling bench work, sorting, packing, etc., and such work would appear to be commensurate with her age, education and prior experience.

Plaintiff has failed to show the necessary disability within the required period of coverage. There is therefore substantial evidence in the record to support the Secretary's decision that plaintiff, having the burden of proof, failed to establish her right to a period of disability and disability benefits. The decision of the Secretary is affirmed.