**Bert GRAHAM, Plaintiff,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 744.**

United States District Court
S. D. West Virginia.

June 23, 1964.

J. N. Harman, III, Welch, W. Va., for plaintiff.

Percy H. Brown, Asst. U. S. Atty., Charleston, W. Va., for defendant.

CHRISTIE, District Judge:

The plaintiff filed application for disability insurance benefits and to establish a period of disability on August 29, 1961, alleging that he became disabled during the summer of 1959, at age 48, because of back trouble, stomach pains, and pains in his legs. The application was denied initially by the Bureau of Old-Age Survivors Insurance, the functions of which are now incorporated within the Social Security Administration, after the West Virginia Vocational Rehabilitation Division, upon evaluation of the evidence by a physician and counselor, had found that plaintiff was not under a disability. He then requested a hearing. The hearing examiner, before whom plaintiff appeared, considered the case *de novo* on the basis of the testimony and documents admitted in evidence, and on December 28, 1962, found that plaintiff was not under a disability. The hearing examiner's decision became the final decision of the Secretary of Health, Education, and Welfare when the Appeals council denied plaintiff's request for review on February 8, 1963. This decision is now before this court for judicial review, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) upon a certified transcript of the record, the complaint of the plaintiff, the answer thereto of the Secretary, and a motion of the Secretary for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. In its review, however, the court is circumscribed by this provision in the Act referred to:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *"

The issues before the Secretary were whether the plaintiff had established a period of disability under Section 216(i) of the Act, as amended, and if so, the beginning date of such disability, and whether he was entitled to disability insurance benefits under Section 223 of such Act, 42 U.S.C.A. §§ 416(i) and 423. These issues were dependent upon specific findings as to whether, during the effective period of the application, filed August 29, 1961, and while the special earnings requirement were met, the plaintiff

was under a disability, as defined by said Section 223, sub-section(c) (2), of the Act, providing that:

"The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

Section 223(a) (1) (D) of the Act requires that a claimant to receive benefits must establish that he was under a "disability", as above defined, at the time of the filing of his application therefor, and the last sentence of said Section 223, subsection (c) (2), of the Act, puts upon the claimant the ultimate burden of establishing his claim in these words:

"An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

■ The courts have given general recognition to this requirement by holding that the burden of proof is on the claimant to establish his claim with creditable evidence. Underwood v. Ribicoff, 298 F.2d 850, (4th Cir. 1962); Maynard v. Celebrezze, 209 F.Supp. 523, 524 (S.D.W.Va.1962); Taylor v. Ribicoff, 204 F.Supp. 144 (S.D.W.Va.1962); Kerner v. Flemming, 283 F.2d 916, 921 (2nd Cir. 1960); Thurston v. Hobbs, 133 F.Supp. 205 (W.D.Mo.1955).

The Secretary found that the special earnings requirements were met during the effective period of the application, but that the plaintiff had not carried the burden of establishing a period of disability and an entitlement to disability insurance benefits.

■ The rule is well established and generally recognized that, under its authority to review the administrative findings of the Secretary, the court may not hear the case *de novo* nor substitute its own conclusions for those of the administrative agency. Its true function is to uphold the administrative finding if there is found substantial evidence to support it. United States v. Certain Interests in Property, et al., 296 F.2d 264 (4th Cir. 1961); Underwood v. Ribicoff, supra; Laird v. Ribicoff, 207 F.Supp. 668 (W.D. S.C.1962); McPherson v. Ribicoff, 209 F.Supp. 341 (D.Md.1962). However, as pointed out in Pruitt v. Flemming, 182 F.Supp. 159, 161 (S.D.W.Va.1960), this rule does not mean that courts should surrender their traditional "judicial function", but instead, that they will see to it that the administrative agency does not act arbitrarily or capriciously in denying just and worthy claims.

Thus, it is seen that in its review of the decision of the administrative agency, the ascertainment of the meaning of the statutory term "substantial evidence", as it relates to cases of this sort, is all-important. For guidance in this regard, we find that a similar provision appears in the National Labor Relations Act, and in construing its meaning there, the Supreme Court, in National Labor Relations Board v. Columbian, 306 U.S. 292, 59 S. Ct. 501, 83 L.Ed. 660, Point 4 of the Syllabus, defined it thusly:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

■ It is fundamental that in considering a motion to strike the plaintiff's evidence, and direct a verdict for the defendant, the court is guided by what its action would be if a verdict were returned for the plaintiff, and a motion made for a new trial on the ground of insufficient evidence. It is axiomatic that if more than one reasonable inference can be drawn from the evidence, the case should be submitted to the jury.

Thus viewed, the rule given in Utica Mut. Ins. Co. v. Rolloson, 246 F.2d 105,

4th Cir., on a motion to set aside a verdict, is pertinent to the inquiry:

"Our inquiry is not whether there was evidence to support a result contrary to the jury's verdict, but whether there was evidence legally sufficient to support the verdict that was found."

So it is here. The inquiry is not whether there is evidence to support a conclusion different from that reached by the Secretary, but whether there is substantial evidence to support the conclusion he *did* reach. We are not here concerned with whether his decision is logical or illogical, or whether we *might* have drawn a different conclusion from the evidence before him, for such is not properly within our sphere of authority under the limitation imposed upon us by the statute. Under this limited authority, we are confined to an ascertainment from an impartial examination of the record of whether or not the decision of the Secretary is supported by substantial evidence.

■ In making this determination, however, it must be borne in mind that the Congress, in amending the law to provide benefits to those covered by it who become disabled from engaging in gainful activity, recognized that existing social and economic needs gave rise to such legislation. Its obvious purpose was the attainment of an humanitarian end; and, like all remedial legislation, it should be liberally construed, interpreted, and administered *that it may accomplish the beneficent result intended.* Pruitt v. Flemming, supra; Carqueville v. Folsom, D.C., 170 F.Supp. 777; Willard v. Hobby, D.C., 134 F.Supp. 66.

But, however, wholesome the purpose and intent of the legislation may be, still the burden of establishing a claim under it is left to rest upon the one who asserts it, and no rule of liberality will take the place of required proof. The award of benefits cannot, therefore, rest upon imagination, speculation, conjecture, or sympathy—only creditable proof will suffice.

Viewed in this context, does the evidence in this case support in a persuasive or substantial way the decision of the Secretary denying plaintiff's claim? This necessarily calls for a review of the evidence, but before doing so, it will be well to examine the pertinent rules of law that must be applied to it.

■ The courts appear to be in general accord that where there is a conflict in the evidence, or conflicting inferences may be drawn from established facts, it is the proper function of the administrative agency to resolve the same, and his decision will be upheld by the courts. Butler v. Folsom, 167 F.Supp. 684 (W.D. Ark. 1958); Taylor v. Ribicoff, 204 F. Supp. 144, 147 (W.D.W.Va.1962); Gotshaw v. Ribicoff, 307 F.2d 840, 845 (4th Cir. 1962). And this is true even though there is but a "slight preponderance of the evidence on one side or the other." Underwood v. Ribicoff, supra; United States v. Certain Interests in Property, et al., supra.

Reverting here to Section 223(c) (2) of the Act, defining "disability", it is clear that for a claim to be established thereunder, the evidence must disclose:

(1) A physical or mental impairment medically determinable as such;

(2) The impairment thus found must be of such severity as to preclude engaging in any gainful activity;

(3) It must reasonably be expected to either result in death in the foreseeable future; or

(4) Be of such permanent nature as to reasonably be expected to continue for a long and indefinite (unforeseeable) duration.

This definition, as it is seen, comprehends a medical finding that the impairment is of such severity and permanency as to preclude the claimant from engaging in any gainful activity, now or in the foreseeable future. Underwood v. Ribicoff, supra; Gotshaw v. Ribicoff, supra; Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962). But in the actual application of the law, it was found that while a given impairment in one individual would

preclude him from engaging in any gainful activity, the same or similar impairment in another individual would not. So the courts, in order to give a practical effect to the law, by a series of decisions, have determined that a more comprehensive inquiry must be made, and that other factors, such as work history, education, skills or the lack of them, age, and job opportunity, are to be taken into consideration in order to reach a total and correct evaluation of the case. Bradey v. Ribicoff, 298 F.2d 855, 858 (4th Cir. 1962); Underwood v. Ribicoff, supra; Kerner v. Flemming, supra; Veranedo v. Flemming, 295 F.2d 693 (5th Cir. 1961); Foster v. Ribicoff, 206 F.Supp. 99 (W.D.S.C.1962); Blankenship v. Ribicoff, 206 F.Supp. 165, 167 (S.D.W.Va. 1962).

Therefore, for this court to properly resolve the question presented by this review, it becomes necessary to analyze the medical evidence and weigh it in the light of the other factors mentioned.

At the onset of his claimed disability, plaintiff was 48 years old, with a seventh grade education, and had worked in the coal mines most of his life, except for the four years from 1942 to 1946 that he was in the military service. While in the service he worked in the officers' club, tending bar for two years, advancing to "head" barman. During the last six months of his military service, he received training in operating a bulldozer. After leaving the service, he worked for a construction outfit until 1948. In 1949, he worked in a bakery for about two months, washing tubs. In 1950, he resumed work in the mines and continued in such employment until he became disabled in 1959. He thereafter did limited work in different wagon mines during 1960 and from March, 1961 to August, 1961 he was on the state's temporary road work program as a flagman, cutting brush and taking care of tools, but he says he had to quit this job because he could not stand on his feet.

At the hearing, plaintiff's basic symptoms were shortness of breath, inability to sleep well; aches and pains in practically every area of his body, but more severe in left side. Because of this discomfort, he claimed he could not drive his car, raise his arms to shave, or walk more than 25 feet at a time.

Dr. John Cook made a laboratory examination of plaintiff April 15, 1959, and stated in his report of April 20, 1959 that it "revealed no pathology" and that patient's chest X-ray was normal.

Dr. George L. Fischer, of Grace Hospital, had plaintiff under examination and treatment in May, 1960 and in February, 1961. His report of these examinations and treatments, dated August 31, 1961, reveals weight 195 pounds, temperature 98°, blood pressure 160/100, nose and throat negative, jundi normal, lungs clear, heart normal, no murmurs, no edena, blood count and urinalysis normal, intravenous pyelogram negative, borderline heart with minimal fibrosis. The doctor concluded from these clinical findings that the patient was "not acutely ill." Dr. Fischer felt, however, that the patient had "some evidence of osteoarthritis of the lumbo sacral spine" which would account for his symptoms of pain in that region. He was treated for this with "local heat and salt free Pabalate" which produced "considerable symptomatic improvement." He was discharged May 27, 1960 with a blood pressure of 140/98 and advised to continue "local heat and salicylates."

He was again seen by Dr. Fischer on February 15, 1961, complaining of back trouble which the doctor says was relieved by "heat" treatment. There was "some tenderness in the left lumbo sacral area" and patient was felt to have "asthmatic bronchitis, mild hypertension, and chronic lumbo sacral strain and osteoarthritis," to relieve which he was prescribed a treatment with Kynex, Ambodryl capsules, Norisodrine syrup, steam inhalation, and aspirin.

Dr. Fischer next saw the patient on December 11, 1961 at the request of the State Vocational Rehabilitation Division, and his clinical findings, as revealed in his report of December 14, 1961, are essentially the same as shown by his pre-

vious report. He concluded that the patient had "essential hypertension with left ventricular enlargement but (with) no evidence of congestive heartfailure." He did find some "pulmonary fibrosis and a history to suggest asthmatic bronchitis * * * but there is no evidence of significant airway obstruction." He also attributed patient's "generalized joint pains to be on the basis of osteoarthritis," but which caused no "particularly marked" limitation of motion.

Dr. E. B. Hume, of the Veterans' Administration Hospital, examined and treated plaintiff from December 13, 1961 to January 12, 1962, and his findings are set forth in his report of February 1, 1962. This report reveals that a consultant in Neuropsychiatry was put on the case and his findings indicate a belief on his part that patient was exaggerating, since he could find no neurological condition to explain the complaints. The consultant concluded with the statement: "Even if he had disc it would not explain most of his symptoms and I think surgery would do more harm than good."

After studying this report of the consultant in Neuropsychiatry and the laboratory and X-ray findings made at his hospital, Dr. Hume observed that "according to the progress notes on this patient the objective evidence of arthritis was slight. There was possibly slight atrophy of the left shoulder. The right sternoclavicular joint was larger than the left. While arthritis may have something to do with the case, neurosis seems also to play a part. The veteran was referred to the dental department for appropriate treatment. * * * Upon completion of his dental treatment he may be discharged without referral to medical service."

Plaintiff was also examined by Dr. George Cook on November 22, 1961, who found evidence of arthritis of the spine, hypertension and cardiac vascular disease, and by Dr. R. M. Cabaltica, of Welch Emergency Hospital, on April 10, 1962 and September 10, 1962. Dr. Cabaltica found patient's heart to be "normal" in size and shape, with some dyspnea, and

blood pressure of 140/60. Pain in the back was evident on bending forward and backward, but there was "no evidence of boney destruction."

The symptoms complained of were largely traceable to, and were characterized in the medical reports as, (a) mild hypertension, (b) slight osteoarthritis, and (c) chronic asthmatic bronchitis. These ailments are common to most men of plaintiff's age and occupation, and their discomforting effects may be alleviated by proper treatment and care. They ordinarily do not produce total and permanent incapacity, as the court recognized in Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960). Moreover, the medical reports show that, in plaintiff's case, these ailments responded properly to medication and treatment. Dr. Fischer termed the plaintiff "not acutely ill" in his August 31, 1961 report, and Dr. Hume discharged him January 12, 1962 as being without need of further "medical service." Ailments which are thus remediable do not meet the test required by the statute and may not be made the subject of a claim for disability benefits, under the applicable section of the Social Security Act, as was pointed out by the court in Bradey v. Ribicoff, supra, in this language:

> "An impairment which is presently capable of being classified as remediable cannot meet the requirement that it be of 'long-continued and indefinite duration.'"

■ It is thus seen that, viewed in the light most favorable to the plaintiff, the clinical findings and the interpretations and evaluations thereof by the several doctors, do not portray a physical or mental impairment, singularly or in combination, of either such acuteness or permanence as to warrant a determination by this court that the Secretary's decision that the plaintiff is not precluded thereby from engaging in any substantial gainful activity is not supported by substantial evidence.

This court accordingly concludes that a fair analysis of the clinical findings and

the interpretations and evaluations given them by the several doctors, and of plaintiff's own subjective evidence, viewed in the light most favorable to him and in the context of his work history, education, age, skills or lack of them, and job opportunity, amply justify the finding and decision of the Secretary, and it appearing that a remand of the case for further development is not indicated, the Secretary's motion for summary judgment is granted, and the plaintiff's complaint is dismissed.