Philip KERNER, Plaintiff-Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 121, Docket 28773.

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1964.

Decided Jan. 13, 1965.

738

---

Harold Tompkins, New York City, for plaintiff-appellant.

Carl Golden, Asst. U. S. Atty., Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for appellee.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge.

Plaintiff, Philip Kerner, brought this action in July, 1959, in the District Court for the Eastern District of New York, as authorized by 42 U.S.C. § 405(g), to set aside adverse determinations by the Secretary of Health, Education and Welfare in May, 1959, on applications, filed in October, 1956, and May, 1957, in which Kerner sought the establishment of a period of disability, 42 U.S.C. § 415(b), and disability insurance benefits, 42 U.S. C. § 423, on the ground of "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Judge Byers granted summary judgment to the Secretary, but in November, 1960, we reversed, Kerner v. Flemming, 2 Cir., 283 F.2d 916, instructing the district court to remand to the Secretary to take further evidence in line with our opinion. When the case was then here, there was no real dispute that Kerner had suffered a heart attack having a disabling effect; the serious question was whether there was evidence to sustain the Secretary's finding that he was nevertheless able to engage in any substantial gainful activity." We instructed that the Secretary was to take further evidence on "two is-

sues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do," 283 F.2d at 921—issues that would better have been stated in the past tense and tied to the date of the applications. Four years after our decision and eight after Kerner's first application, his case again comes before us on an appeal from an order of the district court, accompanied by a thorough opinion of Judge Dooling, granting a new motion by the Secretary for summary judgment.

Shortly after receiving the order of remand, the Department advised Kerner that it was "requesting the assistance of pertinent District Offices of the Social Security Administration in obtaining missing evidence not presently of record (including detailed reports from the records of the Veterans Administration and Mount McGregor Convalescent Camp), and of the New York State Agency in making arrangements for a current consultative examination by an impartial cardiovascular specialist who has also specialized in the treatment of metabolic disorders." Although further evidence of Kerner's physical condition was relevant to determining what he "could do" in 1956 and 1957, and thus was within the letter of our remand order, we had not supposed there would be a second round of evidence as to the degree of Kerner's heart involvement as distinguished from medical and other testimony as to the activities suitable for a person with the history described in the previous record and the corresponding employment opportunities. After long delays, including several changes of counsel by Kerner, a letter by him to the President, and refusal to be interviewed at a sheltered workshop, see 283 F.2d at 922, a five-day hearing was held in August, 1962, resulting in a record of some 1100 pages. The witnesses, in addition to Kerner, were a business man who testified as to unsuccessful efforts to find employment for him; the heart specialist, who testified that further examination showed an impairment considerably less severe than indicated by the bulk of the medical evi-

dence at the 1958 hearing; and an employee of the New York State Employment Service in charge of its job placement program for disabled workers, who testified as to a variety of available opportunities for suitable employment. Many documents bearing on Kerner's physical condition and his employment history and opportunities were also received. In December, 1962, the Appeals Council rendered a 52-page decision finding that Kerner "has not been continuously unable to engage in any substantial gainful activity because of a physical or mental impairment, or combination of such impairments, commencing on or prior to May 1, 1957." Both sides then moved the District Court for summary judgment upon the administrative record.

If the record of the first hearing had contained evidence such as was taken at the second, denial of Kerner's applications would have been legally unassailable, whatever our own views might be. Contrast Janek v. Celebrezze, 336 F.2d 828 (3 Cir. 1964). Any doubt we might now entertain on the factual aspect of the case arises from the weight given to the heart specialist's findings based on his examination of August, 1961. In some passages of its decision the Appeals Council appeared to regard the very occurrence of the heart attack as conjectural—a view unsupported by the specialist's testimony and, very likely, beyond what was permitted by the remand. In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994 (1897); Zdanok v. Glidden Co., 327 F.2d 944, 949–950 (2 Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). However, we concur in Judge Dooling's conclusion that "on the whole record * * * the Council proceeds on the final assumption that the infarction did in fact occur and had circumstantial aftermath * * *." A further point in this same connection is that Kerner's physical condition in August, 1961, was only circumstantially relevant. What was critical was his condition at the time of his applications, Wiley v. Flemming, 198 F.Supp. 705, 707 (D. Ore.1961); if he then met the statutory test, subsequent cessation of disability would simply bring the "freeze" and the benefits to an end. But here also, although some remarks in the decision are troubling, we think the Council appreciated the true issue and utilized the specialist's testimony only for the light it threw on Kerner's earlier condition.

A procedural objection remains to be considered. On May 8, 1962, the Appeals Council entered an order in which it vacated its previous unfavorable action and directed an examiner to hold a hearing, upon completion of which "the entire record including the transcript of the proceedings, shall be returned to the Appeals Council," for the making of additional findings and conclusions. On the second day of the hearing Kerner's counsel objected to this procedure, pointing to the Administrative Procedure Act which provides in § 8(a) that, with exceptions not here relevant, "Whenever the agency makes the initial decision without having presided at the reception of the evidence, such [hearing] officers shall first recommend a decision * * *." The examiner announced that he would have to abide by the order of the Appeals Council.

The Secretary's endeavor to support the procedure on the basis that § 8(a) of the Administrative Procedure Act is inapplicable when a case is considered on remand, confuses two distinct issues—whether an evidentiary hearing on remand is required, and what procedure should be followed if it is. When no evidentiary hearing is needed, e. g., in many cases where a remand is directed simply for clarification of the grounds of the agency's action or for reconsideration in the light of supervening court decisions, the problem here considered does not arise. But when, as in this case, the very purpose of the remand was to take additional evidence, we see no sufficient basis for dispensing with the procedure directed by § 8(a). The word "initial" means the first decision after evidence has been taken, not simply the first decision after evidence has first been taken. The evident purpose of Congress was

that the officer hearing the witnesses should record his impressions for the benefit of the decision maker, and also of a reviewing court. Universal Camera Corp. v. NLRB, 340 U.S. 474, 492–493, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It is true that an evidentiary hearing on remand differs from the earlier hearing in that often both records must be considered and, if a different officer presides at the second hearing, he will not have had the advantage of observing the witnesses at the first. But even if we were to assume, *arguendo*, that exceptions can be read into § 8(a) for cases where the scope of a hearing on remand is exceedingly restricted or where the evidence on such a hearing is solely documentary or not in conflict, such exceptions would not cover a case where so extensive a record was made as here.

 We likewise cannot agree with the district judge that Kerner waived this point by submitting proposed findings of fact and conclusions of law without reiterating his procedural objection, or by failing to make an appropriate motion before the Appeals Council. Kerner's objection was clearly stated in the transcript, and the decision recites that the Appeals Council has "given careful consideration to the entire record in this case, including objections raised by claimant's counsel at the hearing * * *."

 Our holding of procedural error to which Kerner made proper objection nevertheless does not warrant reversal. Although the harmless error statute, 28 U.S.C. § 2111, is not in terms applicable to review of administrative action, we perceive no reason why the salutary principle embodied in it should not be so applied, even when the error consists of a procedural irregularity under the APA as, indeed, § 10(e) of the APA contemplates. The chief reason—indeed, where the issues are so uncomplicated as

under the Social Security Act, about the only reason—for making it mandatory that the man who heard the evidence should render some form of decision, was to provide the ultimate deciders with his evaluation of the credibility of witnesses. See Universal Camera Corp. v. NLRB, supra, 340 U.S. at 496, 71 S.Ct. at 468–469 and the legislative history cited in nn. 29–31. As Mr. Justice Frankfurter there stated, "The significance of his [the hearing examiner's] report, of course, depends largely on the importance of credibility in the particular case." Here there was no real issue on that score; the Appeals Council rejected the testimony of Kerner and his business friend not because the Council disbelieved what they said but because it considered that Kerner had laid down such unnecessary restrictions on employability as to make the testimony wanting in probative force. Similarly Kerner makes no claim that the heart specialist and the employment expert were untruthful in their statements of subsidiary facts. It would be fatuous to suppose that if the hearing officer had recommended a decision in Kerner's favor, the ultimate result would have been different, cf. FCC v. Allentown Broadcasting Co., 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955), or that a remand to obtain a recommendation from him now would accomplish anything save further expense and delay. Decisions such as Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950) and Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951), where the irregularity went to the legal competence of the person making the initial or recommended decision are readily distinguishable. Cf. United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

Affirmed.