**Luther P. MITCHELL, Appellant,**

**v.**

**John W. GARDNER, Secretary of the Department of Health, Education, and Welfare, Appellee.**

**No. 19731.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1965.

Decided Feb. 16, 1966.

Fahy, Circuit Judge, dissented.

Mr. Charles H. Kendall, Washington, D. C., with whom Messrs. T. T. Marye and Allan Fisher, Washington, D. C., were on the brief, for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Arnold T. Aikens, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Circuit Judge, BASTIAN, Senior Circuit Judge, and TAMM, Circuit Judge.

BASTIAN, Senior Circuit Judge.

This is an appeal from an order of the District Court granting summary judgment for appellee, the Secretary of Health, Education and Welfare.

On September 7, 1962, appellant filed an application for the establishment of a period of disability and for disability insurance benefit payments under §§ 216(i) and 223(a) of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423(a). Appellant's application was denied and, after exhaustion of his administrative remedies, the instant action was filed. Thereafter, the Government filed a motion for summary judgment. On March 24, 1965, the Legal Aid Society entered its appearance for appellant and was, by stipulation, permitted to reply to the Government's motion. After hearing on the motion, summary judgment was entered in favor of appellee Secretary; and this appeal followed.

Appellant contends that the record does not support the conclusion of the Secretary that, while appellant may have been the victim of some brain damage and epileptic seizures, his condition could be controlled by specific drugs that would enable him to engage in substantial gainful activity. Appellant asserts that the Secretary neglected "to spell out the work opportunities available to [appellant] which despite his conceded limitations he could perform in a reasonably competent manner." Appellant also asserts that there was no substantial evidence to support the decision of the Secretary.

So far as the question of substantial evidence in support of the Secretary's findings on the frequency and severity of appellant's seizures is concerned, the record discloses that at the hearing in March 1964 Dr. Leonard J. Hantsoo, medical officer at the District of Columbia jail,[1] testified that appellant's epilepsy

1. Appellant was convicted of robbery in 1962 and received a sentence of five to fifteen years. On appeal, his conviction was reversed and the case remanded for a new trial. Mitchell v. United States, 114 U.S.App.D.C. 353, 316 F.2d 354 (1963). Thereafter, appellant pleaded guilty to the lesser included offense of attempted robbery and, on October 11, 1963, was sentenced to one to three years. In addition, appellant is wanted in Pennsylvania for burglary, larceny, receiving stolen

appeared controllable with medication, which at the time of the hearing was four capsules of dilantin with phenobarbital daily. Dr. Hantsoo further testified that appellant's medical records did not indicate any seizures after November 20, 1963. The only evidence to the contrary was appellant's uncorroborated testimony that, while in his cell, he had had further seizures, which had been observed by two or three other inmates and some of the guards. The hearing examiner, who had thoroughly reviewed the clinical records and reports from various penal institutions and from St. Elizabeths Hospital, including one in which appellant characterized himself as a "chronic liar," and who observed appellant as he testified, chose to believe the reports and the testimony of Dr. Hantsoo.[2]

It is clear, as the District Court stated in its opinion, that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. Although the evidence was not in complete harmony on all points, the Secretary was fully warranted in making necessary determinations as to credibility and in resolving the conflicts that appeared.[3] His findings as to appellant's personality disturbance was sufficiently plausible to fall within the limits of the Secretary's authority and was consistent with his own regulation on the subject.[4]

Appellant appears to have worked in the third quarter of 1961, at which time he was arrested on a charge of robbery. He is now imprisoned in the District of Columbia Jail, where he probably will remain for some time. The record further shows that he received four quarters of coverage in each year back to late 1956, with sporadic quarters of coverage before that time.[5] Though humble the

goods, and conspiracy. On October 21, 1965, the Chief Judge of the District Court for the District of Columbia ordered appellant's return to that state. An appeal *in forma pauperis* from the order dismissing appellant's petition for a writ of habeas corpus challenging the rendition order is now pending before this court as Mitchell v. Clemmer, et al., No. 19,742.

2. With regard to appellant's claim that he had had seizures which were not brought to the attention of the medical authorities at the jail, the hearing examiner stated:

"With this particular claimant, there is a serious problem of credibility. It is entirely possible that the claimant did not report certain seizures to the prison physician, or that they were not reported by others. But St. Elizabeths Hospital also reports relatively few typical seizures actually observed, in three periods of commitment. Other institutions report the existence of the disease 'by history.' It is the conclusion of the Hearing Examiner that the claimant is exaggerating the number and severity of the seizures, and that they are not of such frequency or severity to prevent gainful employment, if the claimant were to be employed. The seizures are adequately controlled by medication and there is no acceptable evidence that they have so increased in number over the time he was employed, to presently disable the claimant."

3. Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956), cert. denied, 352 U.S. 1006, 77 S. Ct. 569, 7 L.Ed.2d 551; Walls v. Celebrezze, 215 F.Supp. 414 (S.D.Tex.1963).

4. Pursuant to authority conferred by 42 U.S.C. § 1302, the Secretary promulgated the following regulation:

"Personality disorders are characterized by patterns of socially unacceptable behavior, such as chronic alcoholism, sexual deviation and drug addiction. In the absence of an associated severe psychoneurosis or psychosis, a personality disorder does not in itself result in inability to engage in substantial gainful activity. A person confined in a correctional institution because of antisocial behavior will not be considered disabled unless he has other severe impairments which would preclude any substantial gainful activity if he had not been so confined." 20 CFR § 404.-1519(c) (2) (iii).

5. Social Security Administration "Earnings Certificate." The certificate shows that appellant earned $1934.86, $1909.03, $1821.90, $1681.98 and $1548.32 for the years 1957–1961, respectively. He was arrested and has been in confinement since August 1961. The record further shows that for a period of twelve years prior to his arrest appellant worked as a

appellant's earnings may have been while he was employed, his earning power must be measured by his age, education attainment, training experience, and mental and physical capacity. It is only with the last factor that the Secretary concerned himself, and the record supports his finding that the mental and physical condition of which appellant complains had not precluded his being gainfully employed before his arrest in 1961 and that "there is no acceptable evidence that [the seizures] have so increased in number over the time he was employed to presently disable the claimant." It would be unreasonable to impose upon the Secretary the burden of setting forth job opportunities available to appellant when there would appear to be no reason why, with continuing medication, he could not return to his former work when he is released. Many people carry on gainful activities while using daily medication to control otherwise disabling conditions. Diabetics are persons who exemplify this fact, as do epileptics also. To require this of appellant is not without the spirit of the Social Security Act; otherwise, all of those who by the use of medicines are enabled to work would be entitled to benefits under the Act. Had that been the intention of Congress, it would not have established the present system of screening applications for those benefits.

The record sustains the Secretary and the District Court in finding appellant to be one having the personality defects referred to,[6] and clearly shows his propensity for violating the law. There is no evidence that appellant's physical or mental condition caused these violations; on the contrary, there is evidence that he was found competent to stand trial for the crime for which he is presently confined, and there is no showing of insanity. As indicated above, the Secretary's finding is in accord with his regulation to the effect that "a person confined in a correctional institution because of antisocial behavior will not be considered disabled unless he has other severe impairments which would preclude any substantial gainful activity if he had not been so confined." Note 4, supra page 828. See Mays v. Ribicoff, 206 F.Supp. 170 (S.D.W.Va.1962); Thompson v. Flemming, 188 F.Supp. 123 (D.Ore.1960).

A reviewing court has the duty to search the record and, if substantial evidence is found to support the administrative conclusion, it must be upheld. Wiley v. Flemming, 198 F.Supp. 705 (D. Ore.1961). Kerner v. Celebrezze, 340 F.2d 736 (2d Cir. 1965) is not to the contrary. In an earlier case, Kerner v. Flemming, 283 F.2d 916 (2d Cir.1960), the Second Circuit remanded to the Secretary for further evidence on two issues: "[W]hat can applicant do, and what employment opportunities are there for a man who can do only what applicant can do." 283 F.2d at 921. However, in that case, there was no real dispute that Kerner had suffered a heart attack having a disabling effect; the serious question was whether there was evidence to sustain the Secretary's finding that the applicant was nevertheless able to engage in substantial gainful activity. On the second review, the court said:

> "If the record of the first hearing had contained evidence such as was taken at the second, denial of Kerner's applications would have been legally unassailable, whatever our own views might be. Contrast Janek v. Celebrezze, 336 F.2d 828 (3 Cir. 1964)." 340 F.2d at 739.

The record and the administrative decision in the second *Kerner* case raised doubt as to whether Kerner had even suffered a disabling heart attack. The

cook "off and on" and as a barber part time, a trade he learned while at Lewisburg Penitentiary. It is quite clear that upon his release he could, better than previously, obtain employment which, with the use of prescribed medicines, would be steadier than before.

6. The Secretary also found that if appellant in fact had a chronic brain syndrome, it was of a minor degree and did not significantly impair his ability to engage in gainful employment.

doubt here as to the frequency and severity of appellant's seizures has been resolved against appellant and, as in *Kerner*, the Secretary's decision is conclusive even though here as there, the administrative agency proceeded on the final assumption that the claimant was suffering from some medically determinable condition.

Paraphrasing the language of the court in the second *Kerner* case, and in view of the administrative finding in the instant case that Mitchell "has not been continuously unable to engage in any substantial gainful activity because of a physical or mental impairment, or combination of such impairments, commencing on or prior to" the date of his application for benefits, this court does not reach the question of whether it is incumbent upon the Secretary to "spell out" available work opportunities. However, it would seem clear that the Secretary does not have that burden. Jones v. Celebrezze, 331 F.2d 226 (7th Cir. 1964); Witherspoon v. Celebrezze, 328 F.2d 311 (5th Cir. 1964); Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962); Graham v. Ribicoff, 295 F.2d 391 (9th Cir. 1961); Adams v. Flemming, 276 F.2d 901 (2d Cir. 1960).

Affirmed.

FAHY, Circuit Judge (dissenting).

The ultimate question is whether appellant was shown, on the administrative record upon the basis of which the District Court acted, not to be entitled to the establishment of a period of disability under Section 216(i) of the Social Security Act, as amended, or to disability benefits under Section 223(a) of the Act. Stated otherwise the question is whether appellant has a disability that renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C. § 416(i)(1). This determination is normally for the Secretary, but where he places reliance upon one portion of the testimony to the disregard of overwhelming evidence to the contrary, his findings cannot be affirmed. Cyrus v. Celebrezze, 4 Cir., 341 F.2d 192, 195. Nor is his conclusion to be accepted when the findings themselves are inadequate to support it. Ray v. Celebrezze, 4 Cir., 340 F.2d 556, 559.

Appellant alleged medically determinable impairment, both physical and mental, consisting of grand mal epilepsy and an associated chronic brain syndrome.[1] He also alleged that this would prevent him engaging in substantial gainful employment. The Examiner found,

> From all the evidence there would appear to be no doubt that this claimant suffers from epileptic seizures, and that this condition has existed for many years.

He went into considerable detail, and there is substantial support in the record for this finding. The Examiner also concluded that the epileptic seizures were controlled by medication and that there was no acceptable evidence they had increased in number since appellant had been employed so as to disable him at present. The medication was the maximum dosage.

In addition to being an epileptic it clearly appears that appellant suffered from a brain syndrome related to the epilepsy. As the Examiner stated, in August 1963, a medical staff conference at St. Elizabeths Hospital diagnosed that appellant had a chronic brain syndrome of unknown or unspecified cause, which had existed in May 1962.[2] Eleven of the twelve staff members who participated in the diagnosis agreed to this. The

1. The appellant does not claim disability on the basis of a "personality disorder characterized by socially unacceptable behavior." Discussion by the Hearing Examiner of such ground is irrelevant to the proper disposition of the case.

2. December 1962 is the date of the alleged impairment for purpose of the claim of appellant in this case.

other stated that although appellant had symptoms of a chronic brain syndrome he did not believe they were so pronounced as to lead him to the conclusion the condition was critical.

Bearing further upon the brain condition the Examiner set forth that appellant had been discharged from the hospital of the Virginia State Penitentiary in 1952 as a "schizoid personality" with a history which indicated epileptic attacks since 1944, and that he had been hospitalized in 1945 for epilepsy. The Examiner also referred to the personal history of appellant, his low I.Q., poor education, and moderately retarded intelligence.

As to the brain syndrome the Examiner stated:

> There is a finding of chronic brain syndrome by some psychiatrists, but if it does exist it certainly is not severe * * * and does not significantly impair this claimant's ability to engage in gainful employment.

His final conclusion was that the epilepsy and mental condition were "not of sufficient severity to prevent the claimant from *continuing* gainful employment." (Emphasis added.)

This conclusion I think is without substantial support in the evidence considering the record as a whole. There is no doubt whatever, and the Examiner so found, that appellant is afflicted with grand mal epilepsy and is subject to seizures, to reduce the frequency of which maximum dosages are required.[3] The only testimony on how he could be gainfully employed was that he had earned money as a cook, and as a part-time barber on weekends. This poses the question whether one in his condition can be put to work as a cook or barber, without danger to himself and others, and whether he could obtain such employment now. There is nothing in the record or findings upon which to base a conclusion that appellant could without serious danger to himself and others be substantially gainfully employed as a cook or a barber. On the contrary, there was uncontradicted evidence from a doctor that one in his condition should never be allowed to work as a barber; and the Examiner failed to explore the assertion of appellant that the heat of a kitchen was bad for his condition. Moreover, there has been no exploration in the record and therefore no findings with respect to what "substantial gainful" employment is available to one in claimant's condition.[4] In Ray v. Celebrezze, *supra* at 559, it is said:

> [W]here the Secretary finds a claimant is unable to return to his former job but still is able to work and the evidence in the record does not show any other work which the claimant is capable of doing, the Secretary must take evidence and make specific findings based upon the particular claimant's ability, education, background and experience as to what, if any, kind of work he or she can perform and that employment opportunities of this nature are available.

3. Appellant, as the Examiner stated, claimed that he had many seizures in addition to the few testified to by the physicians who attended him at the prison. He requested issuance of subpoenas to support his claim. But the Examiner refused, saying, I think incorrectly, that "The evidential facts are not in dispute, but only the conclusions that must be drawn in the light of the provisions of the Social Security Act." This seems clearly not well founded factually, with particular reference to appellant's effort to obtain the testimony of jail guards who he claimed had observed his otherwise unreported seizures. Failure to test such testimony of appellant weakens the Examiner's conclusion that appellant's claims respecting his condition were unreliable and also the conclusion that his condition was controlled.

4. In reference to the contrary proposition asserted by the majority it should be noted that in the *Jones* and *Witherspoon* cases the court found substantial undoubted testimony in the record as to the work that appellants there could do, and in *Gotshaw* and *Graham* the court applied the very test that this dissent finds necessary. The *Adams* case was decided on a lack of relationship between the illness and the retirement.

I think this approach definitely applies to this case.

In Celebrezze v. Warren, 339 F.2d 833, 837 (10th Cir.) it is said:

> The activity in which the applicant must be able to engage must be both substantial and gainful. "Disabled" does not mean "completely helpless", but means an inability to engage in "any substantial activity." Teeter v. Flemming [7 Cir., 270 F.2d 871, 77 A.L.R.2d 636]; Flemming v. Booker, 5 Cir., 283 F.2d 321. Such ability is not to be measured by the hypothetical average man, but by the particular claimant's capabilities. Celebrezze v. Bolas [8 Cir., 316 F.2d 498]; Kerner v. Flemming, 2 Cir., 283 F.2d 916. The word "any" in the statute is to be construed by what is reasonably possible, not what is conceivable. A theoretical ability to so engage is not enough if no reasonable opportunity is available. Kerner v. Flemming, supra; Celebrezze v. Bolas, supra.

It was incumbent upon the Examiner, if the Secretary and the court were to agree with his conclusion, to explore appellant's reasonable possibilities of substantial gainful employment, taking especially into account the nature of his illness and the degree and likelihood of its control, dependent upon continued maximum dosages.

The ultimate conclusion of the Examiner as I have stated was that appellant could continue gainful employment. This omitted a finding that the gainful employment would be substantial. Moreover, the only basis for the finding that he could continue gainful employment is data as to his former employment evidenced by an earnings certification of the Social Security Administration. It indicates that over a period of five years from 1957 to 1961 appellant earned $8,896.09. This comes to about $141.00 a month for a man with a family of four to support—himself, his wife, and two small children. This presents the question whether, even if he could "continue" to be employed as thus indicated, his employment would be substantially gainful within the meaning of the statute. Note should be taken of the fact that the former earnings fall below the poverty level for a man with a family of four. Extensive legislative programs of recent years have taken as their premise that an urban family of four with income of less than $3,000 a year is in poverty. 1964 Annual Report of the Council of Economic Advisers 57–59, cited generally in S.Rep. No. 1218, 88th Cong., 2d Sess. (1964). See, also, The Economic Report of the President (1964). I do not say this controls the question before the Secretary. The Report of the Economic Advisers points to the necessity of considering each family separately and lists some of the factors to be taken into account. I think these judgments within the Executive and Legislative Branches of the Government do show a sensitivity to economic need which bears upon the problem the Secretary faces in administering the statutory provisions here involved.

The findings of the extent of impairment do not meet the standard expressed in *Cyrus*; the findings as to work opportunities are at best limited to the Examiner's references to previous employment as a cook and part-time barber, which clearly do not meet the requirements of the *Ray* and *Warren* cases; and there are no findings with respect to the substantiality of appellant's prior employment.

Finally, the Secretary's decision should be tempered by the spirit of the Act. As was said by the District Court of the United States for the Southern District of West Virginia:

> [The] obvious purpose [of the Act] was the attainment of a humanitarian end; and, like all remedial legislation, it should be liberally construed, interpreted, and administered that it may accomplish the beneficent result intended.

Graham v. Celebrezze, 4 Cir., 230 F.Supp. 936, 939.

It may be the claim should be disallowed, but I think not on this record. I would reverse and require the case to be remanded to the Secretary for reconsideration in light of the foregoing, with further evidence if desired.