**John TOOTALIAN, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.**

**No. C 68-270.**

United States District Court
N. D. Ohio, E. D.
Dec. 20, 1968.

Gerald J. Celebrezze, Cleveland, Ohio, for plaintiff.

**1254**

Bernard Stuplinski, U. S. Atty., through Harry E. Pickering, Asst. U. S. Atty., for defendant.

### MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge:

This is an action under Section 205 (g) of the Social Security Act (42 U.S.C.A. § 405(g), for review of the final decision of the defendant (hereinafter referred to as the Secretary) denying certain social security benefits to the plaintiff. The plaintiff filed an application on October 13, 1966, for old age insurance benefits. His application was denied initially and again on reconsideration on June 23, 1967. On December 11, 1967, there was a hearing before a Hearing Examiner of the Secretary at which time the plaintiff, represented by counsel, appeared and testified. A doctor H. E. Miskjian appeared as a witness for the plaintiff. On February 7, 1968, the Hearing Examiner rendered a decision adverse to the plaintiff; and on March 27, 1968, the Appeals Council of the Secretary affirmed the Hearing Examiner's decision. The plaintiff then filed an action in this Court for judicial review of the decision of the Secretary. The parties are now at issue and the Secretary has moved for summary judgment, which the plaintiff now opposes.

The only issue in this case is the age of the plaintiff under 42 U.S.C.A. § 402(a). The Secretary found that the plaintiff's date of birth was January 4, 1906, whereas plaintiff claims that he was born January 4, 1902.

■ The function of the District Court in review of Social Security cases is to search the entire record to determine if the decision of the Secretary is supported by substantial evidence. Mitchell v. Gardner, 123 U.S.App.D.C. 195, 358 F.2d 826 (1966) and Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965). If so, the Court must render judgment for the Secretary, even if the Court would have reached a different position had it heard the case de novo. Walters v. Gardner, 397 F.2d 89 (6th Cir. 1968); King v. Celebrezze, 341 F.2d 108 (6th Cir. 1965). It is the function of the Secretary, not the Court, to resolve conflicts in the evidence and to pass on the credibility of witnesses and documents. Ferenz v. Folsom, 237 F.2d 46 (3 Cir. 1956); Miracle v. Celebrezze, supra; Kelley v. Celebrezze, 243 F.Supp. 18 (D.C.1965). The Court notes that the burden of proof in social security proceedings is on the claimant. Henry v. Garnder, 381 F.2d 191 (6th Cir. 1967); Nelson v. Gardner, 386 F.2d 92 (6th Cir. 1967).

■ As the sole issue before this Court is whether or not the Secretary's position is supported by substantial evidence, a brief summary of the evidence in the record is in order.

Naturalization petition for John Tootalian, No. 61203, certificate issued February 18, 1938, showing claimant's age at the time as 32 years, which would place his birth date in 1906. Application for Social Security number by the plaintiff dated November 24, 1936, signed by him and giving his date of birth as January 4, 1906. Application for retirement insurance benefits on October 13, 1968, claiming date of birth of January 4, 1902.

"United States citizenship can be abandoned, temporarily or permanently, by conduct showing a voluntary transfer of allegiance to another country." 356 U.S. at 73, 78 S.Ct. at 583; compare also Justice Black's concurring opinion in Nishikawa v. Dulles, 356 U.S. 129, 139, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958), where he noted, "Although Congress may provide rules of evidence for [determining when there has been voluntary relinquishment], it cannot declare that such equivocal acts as service in a foreign army, participation in a foreign election or desertion from our armed forces, establish a conclusive presumption of intention to throw off American nationality. [Citation omitted.] Of course such conduct may be highly persuasive evidence in the particular case of a purpose to abandon citizenship."

Report from the Personnel Department of the U. S. Steel Company where the plaintiff was employed in 1930 showing that the plaintiff gave them a January 4, 1906, date for his birth.

Claimant's request for change in social security records filed July 23, 1963, stating that he wanted to change his date of birth from January 4, 1906, to January 4, 1903.

Marriage license certificate issued by the Probate Court at Cleveland to John Tootalian in July, 1930, showing his age at that time as 23 years.

Application for Account No. SS-5 dated November 24, 1936, giving the date of birth of January 4, 1906.

Statement of plaintiff's mother dated December 12, 1966, certified by the diocese of Aleppo Armenian Prelcy stating that plaintiff was born January 4, 1902.

Certificate of birth and baptism diocese of Aleppo Armenian Prelcy dated April 6, 1968, stating that plaintiff was born January 4, 1902.

An old certificate in the Turkish language from the Sublime Ottoman State issued 1341, a year in the Ottoman calendar. As aids to the interpretation of this old document, translations are in the record together with a statement from an expert in the Library of Congress to the effect that Turkish authorities always used the Rumi calendar in their official dealings during the Ottoman Empire. The Moslem or Hegira calendar was never used unless specifically indicated on the document.

The plaintiff's theory in this case is that the Secretary weighed too heavily the information in the record which supported the birth date of 1906 and gave too little weight to material in the record indicating a 1902 birth date. For instance, it was brought out in the record that the claimant used a 1906 birth date both in his application to United States Steel and in his naturalization proceedings. Counsel for plaintiff claims the Secretary placed a high weight of reliability on these two pieces of evidence despite plaintiff's testimony that he used a later birth date only because it was to his financial advantage to do so. The plaintiff's position, however, raises credibility problems which the Secretary had a right to weigh also.

Similarly, with respect to the certificates issued under the Seal of the Armenian church stating that the plaintiff was born in 1902, the Secretary could reasonably have placed little weight as to their reliability on the grounds that the certificates were issued only in 1966. The certificates were not abstracts of old church records but they are simply the statements in 1966 of witnesses who signed the certificates. (Transcript, pages 29 and 37.) The Secretary could have found that these documents were not reliable on grounds other than the integrity of the witnesses who signed them because of the long time that passed from the birth of the plaintiff before they actually made the statements certified by the church. This is equally true of the certificate issued on the statement of the plaintiff's mother since there is no indication that her statement is based on ancient records in her possession.

The bulk of the record in this case goes to the reliability of Exhibit 10(a), the old Turkish document written in the Turkish language. It is undisputed in the first place that the document reveals the plaintiff was born in the year 1321, and that the document was issued in the year 1341. This would mean that twenty years had passed from the plaintiff's birth to the issue date of this document and, therefore, this document on its face is not of the highest order of reliability referred to in 20 C.F.R. 404.703. The Court points out, in addition, that the record is replete with remarks by the plaintiff's expert, Dr. Miskjian, that the only official and highly reliable birth records were the church records which regrettably have all been destroyed during and since the First World War. There was testimony by Dr. Miskjian throughout the record that the Turkish records were not particularly reliable.

A substantial issue as to the weight of this document revolves upon whether the 1321 date of the plaintiff's birth was on the Rumi calendar, or the Hegira or Arabic calendar. The importance of this dispute is highlighted by the fact that 1321 in the Rumi calendar would be the equivalent in our calendar to the 1905–6 period whereas the Hegira or Mohammed calendar would place the 1321 date in the 1903–4 area. The testimony of Dr. Miskjian, the plaintiff's own witness, corroborates the use of the Rumi calendar. Several places in the record, Dr. Miskjian says that the equivalent of the year 1341 is 1925; the equivalent of the year 1330 is 1914. The equivalent of the year 1321 would, therefore, appear to be 1905. In fact, in one place in the transcript, Dr. Miskjian says that the year 1321 in the document refers to the year 1905 to 1906 in our calendar. (Transcript, page 34.) Referring to the Rumi calendar, Dr. Miskjian said " * * * that's the one in which all business transactions and military transactions were conducted because the other one was the Arabic calendar which is an impossible hodge podge * * *." (Transcript, page 33.) The Court notes that the plaintiff's own witness, Dr. Miskjian, took no issue with the statement of the expert from the Library of Congress that Turkish dates in the Ottoman Empire were in the Rumi calendar unless there are indications to the contrary. Dr. Miskjian also testified that he saw no indications on the document that it was other than a Rumi date. (Transcript, pages 34–35.)

The plaintiff, assuming that the year 1321 on the Rumi calendar is the equivalent to 1905–6 in our calendar, contends nevertheless, through the testimony of Dr. Miskjian, that his birth date is 1902. Dr. Miskjian testified as to the practice of Christians in Turkish Empire of waiting some period before reporting a birth. The reason was that the Turkish Government demanded taxes of the Christians in lieu of taking their young men for military service. Dr. Miskjian testified that in his own case he was born one year before the birth record which he possessed. He then surmised that because the plaintiff lived in a more rural area, he might have been born several years before the birth was reported. But Dr. Miskjian did not or could not estimate exactly how many years, if any, this gap might be in the plaintiff's case.

The Court finds upon close examination of the entire record that there is substantial evidence to support the Secretary's finding that the plaintiff was born in 1906. There is much conflict in the evidence and considerable problems of reliability and credibility of documents. By finding for the Secretary in this case, the Court should not be understood as believing that the plaintiff and his witnesses lack integrity but only that the Secretary could, and did, reasonably find what he did find based on substantial evidence.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court orders summary judgment rendered for the defendant, and the complaint of the plaintiff is ordered dismissed.