Henry JANEK, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 14771.

United States Court of Appeals Third Circuit.

Argued April 15, 1964.

Decided Sept. 30, 1964.

Robert Joseph Amoury, Staten Island, N. Y., for appellant.

Morton Hollander, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., David M. Satz, Jr., U. S. Atty., Alan S. Rosenthal, Edward Berlin, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, HASTIE, Circuit Judge, and KIRKPATRICK, District Judge.

BIGGS, Chief Judge.

The plaintiff, Henry Janek, suffered an injury to his back on April 6, 1959, and subsequently filed an application for the establishment of a period of disability and for disability insurance benefits under the Social Security Act §§ 216(i) and 223, respectively, as amended, 42 U.S.C.A. §§ 416(i) and 423. His application was denied, and a request for reconsideration made by him also was denied. Thereafter, a hearing was held and upon denial of the claim by a Hearing Examiner further review was denied by the Appeals Council of the Bureau of

Hearings and Appeals, making the Hearing Examiner's decision the final order of the Secretary of Health, Education and Welfare. See Goldman v. Folsom, 246 F.2d 776, 778 (3 Cir. 1957).

Janek then brought the suit in the court below under Section 205(g) of the Act, as amended, 42 U.S.C.A. § 405(g), and the court below granted the Secretary's motion for summary judgment under Rule 56, Fed.R.Civ.P. 28 U.S.C., on the grounds that there was sufficient evidence in the record to support the Secretary's finding. The appeal at bar followed.[1]

Janek came to the United States from Germany in 1954. At the time suit was filed in the court below he was 36 years old, married and the father of two children.

Prior to coming to the United States, Janek had had approximately eight years of schooling or what we would designate in this country as graduation from grammar school. He subsequently had three years of training in an apprenticeship program for a clerical office, under the German system. This training was interrupted by World War II. Janek estimates his training in this respect to be the equivalent of a high-school education in the United States. He has received no mechanical training of any kind. After the war he worked in Germany as a coal miner and as a laborer in removing war-damage debris in and around Berlin. It does not appear that he was ever employed as a clerk in Germany.

After coming to the United States, Janek and his wife attended night classes in the English language. This is the sole education he has had here. The lower court indicated that "a reading of the transcript of the hearing in this proceeding, and of the papers filed by plaintiff in connection therewith, indicate that he is an alert individual, with a good understanding and command of English, and above average intelligence."

Janek's first job in this country, indeed of short duration, was for a bakery company, where the work consisted of cleaning the utensils used in baking. Following this, from April 1954 to August 1955, he worked in a chemical factory washing empty drums and moving filled drums from place to place. From August 1955 to January 1956, Janek was employed as a power-press operator for a manufacturer of fire extinguishers. Thereafter and until May 18, 1959, he worked for the Federal Pacific Electric Co.

On April 6, 1959, Janek, in the course of his employment, while sliding or pushing a heavy case across the floor, sustained a painful injury to his back. Recovering from a temporary inability to straighten his body up, i. e., to stand erect, he continued to work and seemingly required no medical attention at the time. Two weeks later, his back having become more painful, he consulted the company physician and received treatment until May 29, 1959. On that date he was hospitalized in the St. James Hospital, complaining of back pains, where he was placed in traction, the diagnosis being myositis or inflammation and strain of a muscle in the lower back, parospinal. He was subsequently discharged as "improved." After returning to work and finding himself physically unable to perform the jobs allotted to him, Janek, on June 20, 1959, was again hospitalized this time at the Hospital for Crippled Children and Adults. The diagnosis was "herniated disc, L–5, S–1." On July 2, 1959, the disc was removed by a laminectomy and Janek was subsequently discharged.

On advice from Dr. Phillip Willner, the surgeon who operated on him, and Dr. I. J. Bernstein, a chiropractor and Janek's personal physician, that he could no longer do "heavy work," Janek applied to his former employer, Federal Pacific Electric Co., seeking "light work." It was refused him. He secured employment as the driver of a Good Humor truck for one day and sporadic jobs as a painter. He has secured no other gainful employment.

---

1. Janek also made a motion for summary judgment.

Section 223(c) of the Social Security Act, 42 U.S.C.A. § 423(c) (2), defines the "disability" which must be shown before an applicant is eligible for insurance benefits as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." The identical definition, in Section 216(i) (1), as amended, 42 U.S.C.A. § 416(i) (1), is applicable under Section 216(i) (2), as amended, 42 U.S.C.A. § 416(i) (2) in order to determine the period of disability.

Our task is to determine whether the court below applied the proper test when it held under Rule 56 that there was substantial evidence in the record to support the finding of the Examiner that Janek was not precluded by his physical condition from substantial gainful activity. Section 205(g) of the Act, as amended, 42 U.S.C.A. § 405(g).

Janek was examined by several physicians in connection with his injury, some of whom examined him on behalf of the Secretary and some on behalf of the State of New Jersey, Workmen's Compensation Bureau.

Dr. Bernstein's first post-operative report, made in the capacity of attending physician to the Massachusetts Mutual Insurance Co., the insurer of the Federal Pacific Electric Co., indicated that "claimant's position is growing worse and while claimant is mentally competent, he is by reason of the present disability permanently, continuously and wholly prevented from pursuing any and all occupations." However, his two later reports made to the Hearing Examiner indicated that the appellant does have the capacity to perform "light work" "but no heavy lifting or bending."

The reports of the other doctors agree that Janek suffers from post-operative effects of the laminectomy performed on July 2, 1959, in the lumbosacral area.

Dr. R. A. Krenz's examination revealed a post-operative rheumatoid condition or early arthritis infiltration in both sacro-iliac joints connected with the laminectomy. His report, dated July 11, 1961, indicated also that radiological tests reveal "severe tenderness in the lower back on palpitation. The lateral lumbar view shows the presence of a slightly exaggerated lumbosacral angle. This is accompanied by slight thinning of the lumbosacral disc."

Dr. Sidney Keats found that "forward flexion of the trunk is restricted 35%, lateral bending is restricted 15%. Extension is restricted 15% * * *. This patient presents residual sequelae of a laminectomy and excision of a herniated disc at the lumbo-sacral level. I do not believe his function disability should prevent him from working."

Dr. David S. Eisenberg stated that "He [Janek] has made a good recovery from the laminectomy. I would, however recommend that he continue with drafting school because he will probably be unable to do hard manual labor from now on."

Dr. Samuel L. Pollock reported that "I would estimate permanent neurological disability to be 12½% of partial total, due to this accident, overall being greater." [2]

On November 27, 1961, Dr. Louis J. Cheskin, following a consultive examination, reported as follows: "The shoulder, elbown [sic] wrist and finger joints are normal in appearance and range of motion. The muscle power is intact throughout. The knee and ankle joints are normal in appearance and motion is normal at these joints as is the muscle power involved with motion. Tactile and vibratory senses are intact. There is a shrapnel scar at the medial aspect of the right knee. Straight leg raising, single and together, is normal. In standing, there seems to be a slight elevation of the right pelvic brim, i. e. the crest of the ilium. There are no tender points on palpitation along either of the sciatic

2. Janek received an award from the New Jersey Workmen's Compensation based on a finding of 25% partial total disability.

nerves. There is a healed operative scar extending from about the level of L3 to the sacrum. The forward bending is comparatively good with the fingers about 3 inches from the level of the toes. Dorsiflexion of the spine, lateral bending and lateral rotation is unimpaired in range at this time. There is no spasm or tautness of any of the muscles of the lower back or the posterior thighs."

Dr. Cheskin further stated: "Insofar as the feeling of warmth and aching in the operative area of the lower spine and the associated 'lightning like' or 'needle like' pains in the buttocks and the heels of the legs is concerned, I cannot deny, despite the negative neurological findings, that this patient may be experiencing same. They may be secondary to the laminectomy as a neuritic type or radicular type of pain. These may be disabling enough, inasmuch as they occur primarily as the claimant states, when he is up and about and active, i. e. with walking, standing or exertion. If such is true then it is obvious that he would, most likely, be unable to do any work which entails standing or walking or exertion of moderately severe or severe degree. However, one cannot say, that he might not be able to do some type of sedentary work at which he could sit down at a bench or chair. Therefore, unless such were attempted, I could not honestly attempt to say that this individual is so totally and permanently incapacitated that he cannot do any or all type of work, i. e. even sedentary work."

Dr. Harold M. Somberg stated that "from the neurological point of view, there is no reason why this patient should not be working. His present disability is primarily on an emotional basis and may well be related to the pending litigation."

Dr. Max M. Novich stated that, "This man shows only a minor amount of residuals considering the type of surgery done on his back. He has a large potential for usable employment."

The Hearing Examiner in his opinion stated: "It may be that the claimant is unable to engage in arduous physical effort or even in resuming his former work as power press operator because of its fairly arduous demands and multiple disciplines. Nevertheless, his impairments should not preclude him from engaging in some type of sedentary work or even moderately physical work within his capacities."

The Hearing Examiner also found that the claimant "has constant pain in his back, and this has affected his legs. He attempted resumption of employment with the Fedders Firm (Federal Pacific Electric Co.) but they wouldn't take him back because they had nothing but heavy work for him, and he could only work at *light work*. He has appealed to other firms which might have light jobs * *. In each case he was rejected because he failed to pass a physical examination."

The only medication Janek now takes is aspirin, and a pill prescribed by Dr. Bernstein to relieve pain. He asked Dr. Bernstein whether further surgery might be necessary and was informed that it would not be.

As the Court below indicated, "There appears to be no question that plaintiff has a medically determinable physical * * * impairment which can be expected * * * to be of long-continued and indefinite duration." The test of claimant's disability or inability to engage in any substantial gainful activity is a subjective one. Jarvis v. Ribicoff, 312 F.2d 707 (6 Cir.1963). The medical reports indicate that an impairment of the type claimed by Janek could result from a laminectomy. Only Dr. Somberg's report discredited Janek's claim of disabling pain. The Hearing Examiner did indicate in his opinion that, "He [Janek] exhibited no symptoms of dyspnea (difficult or labored breathing), discomfort, debility (lack or loss of strength), or malaise (any uneasiness or indisposition, discomfort or distress). He moved about fairly energetically, without significant limitation of motion which negated his alleged pain." This opinion, however, does not agree with the reports of the experts, who, save possibly only Dr. Somberg, seem not to deny that Janek suffers the pain he al-

leges. Dr. Somberg is the only examining physician who seems to assert that Janek is not suffering post-operative effects. It appears that substantially all the evidence points to the fact that Janek at least has been disabled to the extent that he can no longer hold the job he previously held as a power press operator with Federal Pacific Electric Co. This is not to say, however, that he cannot engage in any substantial gainful activity.

■■ This court has held, however, that the test for disability consists of two parts: (1) a determination of the extent of the applicant's physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. Stancavage v. Celebrezze, 323 F.2d 373 (3 Cir. 1963); Farley v. Celebrezze, 315 F.2d 704 (3 Cir. 1963); Hodgson v. Celebrezze, 312 F.2d 260 (3 Cir. 1963); Klimaszewski v. Flemming, 176 F.Supp. 927, 931 (E.D. Pa.1959). Thus in the case of an employee who can no longer perform the work he used to do but is not totally disabled the question is what can he do by way of any gainful employment. Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960). The words "any substantial gainful activity" must be read in the light of what is reasonably possible and not what is conceivable. Hodgson v. Celebrezze, supra. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. Roberson v. Ribicoff, 299 F.2d 761, 763 (6 Cir. 1962).

■ In determining what kind of substantial gainful activity Janek can engage in, not only his physical disability must be considered but also such other meaningful factors as his age, education, training and work experience must be taken into account. Hodgson v. Celebrezze, supra. See also 20 C.F.R. § 404.-1502(b), as amended (1962).³ Thus the determination must be made from all of the facts of the case.

The Hearing Examiner evidently based his denial of Janek's claim on the fact that "[T]he claimant is a comparatively young man who suffers from a language barrier, and who finds it difficult to secure work and opportunities that might be his if there were no language barrier. * * * [and] is undoubtedly troubled by his formidable financial needs, and unavailability of high grade employment which might satisfy those needs. * *" The Hearing Examiner leaned heavily on the fact that Janek had had some three years of clerical training but admitted that "because of the language barrier, he is unable to do clerical work." ⁴

The Hearing Examiner's statement, referred to above, respecting clerical employment and the Secretary's argument that the appellant applied for work only at those places which had "heavy work" to offer are not supported by the record. Janek's Exhibit No. 12 shows that he applied for work at some 65 different

---

3. This provides in substance that the physical or mental impairment of the applicant must be the primary cause for the individual's inability to engage in substantial gainful activity.

4. It should be observed that in his pro-se brief filed in this court Janek asserts that the trial court erred when it stated that he did not dispute the fact that his physical condition would not prevent him from handling a number of jobs that might be characterized as " 'light work' such as payroll clerk, watchman, timekeeper, inspector, etc., but [he] insists that he is unable to secure such employment because he suffers from a language barrier." Janek goes on to say: "This is an erroneous conclusion of the District Court. The fact is, that the plaintiff did dispute the alleged facts as stated above. The District Court completely neglected to consider some important elements, namely the timefactor [sic], and the factor that plaintiff's lack of qualification and his physical condition were the primary cause [sic] that he could not secure employment. The language difficulties alone, did never prevent plaintiff from obtaining employment."

At an earlier point in his brief Janek refers to his "poor English".

We have set out the foregoing to the end that Janek's position in respect to the "language barrier" may appear more fully in this opinion.

**834**

firms, all of which had "light work" to offer. He was refused at most of them because he could not pass a physical examination. In other cases, he could not qualify for the position or positions he sought.

The large figure, sixty-five applications for employment, is amplified by the fact that the appellant appeared at the New Jersey State Unemployment Office, some fifty times seeking work as a clerk, and was told that the language barrier, his lack of experience, and the nature of his injury made it difficult to obtain such a position for him. He was unable to get a position through this agency. The record also reveals that he did in fact appear at several other places in search of a position as a clerk, guard, restaurant worker, service station attendant, timekeeper, and supervisor. Janek went to several private employment agencies but was unable to secure work. He attempted rehabilitation through a drafting course, but found that the six hours of standing and leaning required by the course was physically burdensome in that it caused pain in his back which radiated into his buttocks and left leg, compelling him to leave the course.

Notwithstanding the fact that it was specified by the Hearing Examiner that Janek may obtain employment as a watchman, clerk, or other similar sedentary employment, it appears that he has gone far indeed in seeking employment. He is not required to exclude every reasonable hypothesis of possible employment. Cochran v. Celebrezze, 325 F.2d 137 (4th Cir. 1963). Jarvis v. Ribicoff, supra. It would appear that his training is of no avail since he, as admitted, is unable to put it to use because of "his lack of experience and the nature of his injury."

■■ It is well settled that on a motion for summary judgment the court must take that view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences that might reasonably be drawn from the evidence, thereby placing the burden of proving the absence of any factual issue on the movant. See Kress, Dunlap and Lane, Ltd. v. Downing, 286 F.2d 212 (3 Cir. 1960). See also 6 Moore Fed.Prac. ¶ 56.15(3) at 2123 (2d ed. 1953). As we said in Krieger v. Ownership Corp., 270 F.2d 265 (1959), any doubt as to the existence of a genuine issue of fact is to be resolved against the movant. It is equally well settled that a motion for summary judgment does not present a trial of issues but is for the purpose of determining whether there are any genuine issues as to material facts, and that it must clearly appear on such a motion that there is no genuine issue as to any material fact if the motion is to be granted. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1963). To so state the law is sufficient, we think, to make it apparent that the court below erred in deciding the case at bar against Janek on motion for summary judgment.

■ It would seem that at best Janek must find work somewhat light in nature. The practical availability of such work for him, a man subject to "a language barrier" and suffering from a substantial physical disability, must be decided by the Secretary in the light of what we have said in this opinion and in Hodgson v. Celebrezze, supra, in particular at 263–264 of 312 F.2d. We are of the opinion that the Secretary's conclusion does not find adequate support in the present record. The Secretary erred in failing either to find for Janek in accordance with the evidence indicating his inability to find work, or to show an adequate basis for concluding that Janek could have obtained light work by the exercise of reasonable diligence on his part.

The judgment will be reversed and the case will be remanded with the direction to the court below to enter a judgment requiring the Secretary to determine whether Janek is able to engage in substantial gainful activity or is entitled to disability insurance benefits in the light of the principles enunciated in this opinion and in Hodgson v. Celebrezze, supra.

Upon the return of the case to the Secretary by the court below the parties may be given an opportunity to amplify the record by further evidence should this be deemed desirable.