Pat ENRIGHT, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 1136.

United States District Court
D. Montana,
Butte Division.
Jan. 25, 1965.

Thomas F. Kiely and Thomas F. Joyce, Butte, Mont., for plaintiff.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendant.

WILLIAM D. MURRAY, Chief Judge.

This is an appeal under the provisions of 42 U.S.C.A. § 405(g) from a final decision of the Secretary of Health Education and Welfare denying plaintiff's application for a period of disability, and disability insurance benefits under the Social Security Act, particularly §§ 416 (i) and 423(a) of Title 42 U.S.C.A. In his application, plaintiff claimed he became disabled January 10, 1960 due to "arthritis—also have an artificial leg— Silicosis almost 3rd stage". At the time of filing his application, plaintiff met the "insured status" requirements of the Act.

When his application was denied by the District Office and the Reconsideration Branch of the Social Security Administration, plaintiff requested and obtained a hearing before a Hearing Officer on March 7, 1962, which officer rendered a decision adverse to plaintiff. The Appeals Council in a decision rendered February 4, 1964, affirmed the Hearing Officer's decision, and it is the decision of the Appeals Council which is the final decision of the Secretary which this action is brought to review.

■■ "Disability" under the Social Security Act is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration. 42 U.S.C.A. §§ 416(i) (1) and 423(c) (2). These sections also impose upon a claimant of a period of disability and disability insurance benefits the burden of proving his disability. Under the Act, the function of weighing the evidence and determining whether or not disability within the meaning of the Act has been established is assigned to the Secretary, and the court's function is simply to review the Secretary's decision and determine whether it is supported by substantial evidence. If the Secretary's decision is supported by substantial evidence, it is conclusive, and must be affirmed. 42 U.S.C.A. § 405(g).

■■ "Substantial evidence" is more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct.

206, 217, 83 L.Ed. 126; N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660. The question of what amounts to substantial evidence is a matter of law for the reviewing court to determine upon a considered evaluation of the whole record. Hayes v. Celebrezze, (C.A.5, 1963) 311 F.2d 648, 651.

■ After reviewing the entire record in this cause in the light of the foregoing basic general principles, the court has come to the conclusion that the plaintiff has met his burden of proof, that there is no substantial evidence supporting the Secretary's decision, and that the said decision must be reversed.

The record shows that at the time of the hearing, the plaintiff was 54 years old, having been born in March, 1908. He has a ninth grade education, plus intermittent attendance at a business college where he received some instruction in bookkeeping, typing and general business subjects. However, he never completed the course, nor has he ever had any work experience along these lines. Mainly his employment has been as a farm laborer, construction laborer and carpenters helper on road construction and as a miner, all jobs involving heavy manual labor.

In 1929, while employed in the mines, he was caught in a fall of ground and suffered the loss of his right leg above the knee.

After being fitted with an artificial leg, the plaintiff continued working, alternating his employment between construction work and mining until 1937. From 1937 until 1957, he was continually employed in the mines in Butte, not as a miner, because his physical condition due to the loss of the leg would not permit such employment, but at various odd jobs such as greasing mine cars, collecting trash, priming explosives, cleaning the change rooms, and finally as a watchman. On his job as watchman, he was required to walk about a mile every hour. In August, 1957, because of pain in his left leg, which the plaintiff described as arthritis, and shortness of breath, he was forced to quit his job as watchman, and except for a few odd jobs, he has not worked since.

There is a suggestion in one of the medical reports, which the Hearing Examiner and Appeals Council seem to have adopted, and attached some significance to, at least, that plaintiff was dismissed as watchman because of reduction in force, rather than quitting because of his physical condition. However, plaintiff explained at the hearing that the reference to his being discharged because of reduction in force was an error on the doctor's part; that he was forced to quit because of his physical condition quite sometime prior to the reduction in force referred to, and that at the time he quit he was forced to be off of his feet completely for some time.

The evidence also shows that in 1945 plaintiff had half of his stomach removed because of ulcers. The Appeals Council found that this condition had no bearing on his disability and that he did not claim that it did. This finding is not quite accurate. While it is true that the stomach condition per se does not contribute directly to plaintiff's disability, the plaintiff testified and it is uncontradicted, that because of his stomach condition, he is unable to tolerate sufficient aspirin and other medication prescribed for pain to completely relieve the pain which the evidence shows, and the Appeals Council concedes he suffers in the stump of his right leg and in his left knee. To this extent, the removal of half of his stomach contributes to plaintiff's overall condition.

With regard to the odd jobs that plaintiff performed after leaving his watchman's job, they consisted of cleaning an apartment, mowing a lawn, helping to dig a basement and so on. The record shows that these jobs were sporadic, and were performed on a work-when-and-if-you can basis. None of them, or all of them together demonstrate an ability on plaintiff's part to engage in a substantial gainful activity within the meaning of the Act.

There is also in the record uncontradicted evidence that about two years be-

fore the hearing, which would have been fairly close to the claimed date of disability, the plaintiff was referred to the Vocational Rehabilitation Service for possible vocational rehabilitation, but upon a physical examination he was rejected for vocational rehabilitation because of his physical condition.

As to the medical evidence in the record, there is first a report by Dr. J. C. Murphy, Assistant Medical Director of the Montana State Tuberculosis Sanitarium, where plaintiff was examined on February 16, 1959, only to determine the degree of silicosis he had. Dr. Murphy diagnosed plaintiff as having pulmonary emphysema, probably progressive, and described the specific restrictions on plaintiff's activities as limited. This examination was concerned only with his pulmonary system and did not consider his orthopedic problems. There is also a report from Dr. A. C. Knight, the Superintendent of the TB Sanitarium, which contains essentially the same diagnosis as Dr. Murphy's report, and makes no reference to plaintiff's other problems.

There are also two reports from Dr. R. C. Kane, the plaintiff's personal physician. One is dated November 4, 1960, and the other July 11, 1961, but both contain the same information. Dr. Kane reported that plaintiff's illness or injury commenced January 26, 1959. His diagnosis was rheumatoid arthritis, generalized, Silicosis, 2nd stage chronic, and amputation of his right leg. He described the limitations on the plaintiff's activities as complete.

There is a report by Dr. William E. Kane who diagnosed plaintiff's condition as pulmonary emphysema and amputated right leg, but did not answer the question as to restrictions on the plaintiff's activities.

All of the above medical reports are on Department of Health, Education and Welfare Medical Report forms.

In addition there is a copy of a medical report made by Dr. J. L. Patterson, Jr., to the Montana Industrial Accident Board, dated January 24, 1962, reporting on the results of his examination concerning plaintiff's respiratory condition. He summarizes his findings as follows: "The x-ray studies above reveal that this man has silicosis. Pulmonary function tests reveal that he has some obstructive difficulty, probably secondary to it. In summary I would say that he has silicosis and has a mild to moderate disability secondary to it." Results of pulmonary function studies were enclosed with the report. As a result of Dr. Patterson's examination, plaintiff was awarded Montana State Silicosis benefits under the statute, which reads in part as follows: "Payments shall be made under this act to any person who has silicosis * * * which results in his total disability so as to prevent him from engaging in a gainful occupation." Section 71–1003(a), R. C.M.1947.

Finally there are two reports by doctors who examined plaintiff on behalf of the defendant, one a specialist in internal medicine and the other an orthopedic surgeon. Dr. Gold, the internist, stated his conclusions as a result of his examination as follows: "Conclusions: According to the Guide to Evaluation of Permanent Impairment of Extremities and Back, Mr. Enright has the following impairment: 1. Amputation of the right leg above the knee is rated as 36% disability of the body as a whole and limitation of the motion of the dorso-lumbar spine is rated as 6% impairment of the body as a whole, giving a total orthopedic, rheumatic, and arthritic limitation of the body as a whole of 42%. There is no limitation of any other joint. Pulmonary disability due to minimal emphysema is rated at 10%."

The orthopedic surgeon, in addition to noting minimal arthritic changes in the plaintiff's spine and left knee, reported a diagnosis of "1. Above the knee amputation, right lower extremity. 2. Torn or degenerated medial menicus, left knee. 3. Medial chondromalacia of the left patella." In connection with the amputated stump of the right leg, the orthopedist noted, "There was some tenderness over the distal end of the stump. A small

neuroma could be palpated which caused pain on palpation. There was also a small exostosis palpated on the distal end of the stump which caused pain on palpation." The medial menicus of the left knee, which the orthopedist determined was torn or degenerated in plaintiff, is defined by Dorlands Medical Dictionary, 23rd Edition, as an interarticular fibrocartilage.

Thus, the picture presented by the evidence in this case is one of a 54 year old man with a ninth grade education, whose principal occupation in life called for heavy manual labor. The medical evidence conclusively establishes that he has suffered the loss of his right leg above the knee; that in his left knee he has arthritis and a torn or degenerated interarticular cartilage; that he has some arthritis of the spine as well; that he suffers from silicosis and pulmonary emphysema; and has sustained the loss of half of his stomach, by reason of which he is unable to tolerate the necessary medicine and drugs to relieve completely the pain in the stump of his right leg, and in his left knee and back due to arthritis.

The evidence further discloses a man who, after losing his leg in 1929 continued to work, and from 1937 to 1957 was steadily employed in the mining industry at progressively easier jobs because of his degenerating physical condition, until in 1957 he was forced to quit a job as watchman because of the pain in his left knee and shortness of breath. Thereafter he continued for a period of several years attempting to work at odd jobs, and finally had to abandon these attempts, and was found physically unfit for vocational rehabilitation by the Bureau of Vocational Rehabilitation.

The Appeals Council recognizes the various physical afflictions from which plaintiff suffers and that they cause him pain and disable him as far as his former employment or any heavy manual labor is concerned. However, the Council holds that plaintiff's impairments, neither singly nor combined, disable him from engaging in any substantial gainful activity, with emphasis on "any", and lists numerous jobs from the Dictionary of Occupational Titles and Worker Trait Requirements for 4000 Jobs which it speculates without a shred of evidence are available to plaintiff and within his capabilities, physically, and training and experiencewise. The Council overlooks the fact established by the evidence that plaintiff was rejected for rehabilitation by the Bureau of Vocational Rehabilitation.

"The rejection for rehabilitation by the Service, at least, was some evidence that nothing was available in the way of employment opportunities for Hall in Kentucky. We cannot believe that the Secretary is suggesting that if employment opportunities for a disabled person are not available in the state where he has lived for practically all of his life that he should pull up stakes and move to some far off place where such opportunities might be better. Butler v. Flemming, 288 F.2d 591, 595 (C.A. 5)."

Hall v. Celebrezze, 314 F.2d 686, 689 (C.A. 6 1963).

In Ratliff v. Celebrezze, 338 F.2d 978, 982 (C.A. 6 1964), the court quoted from numerous decisions in a statement which seems particularly appropriate to this case:

" 'If a wage earner has the inability to engage in "any substantial gainful work" which is commensurate with his education, training, experience, and physical and mental capacities, then he should be given the benefit of the "disability freeze." ' Aaron v. Fleming, D.C. M.D.Ala., E.D.1958, 168 F.Supp. 291, 295. 'The words "any substantial gainful activity" must be read in the light of what is reasonably possible and not what is conceivable. Hodgson v. Celebrezze, [312 F.2d 260]. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. Rober-

son v. Ribicoff, 299 F.2d 761, 763 (6 Cir. 1962).' Janek v. Celebrezze, 336 F.2d 828, 833 (C.A. 3). Claimant 'was not required by the use of a catalogue of the nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment.' Butler v. Flemming, 288 F.2d 591, 595 (C.A. 5).

" 'Perhaps it is true that history teaches that "A man may have to endure discomfort or pain and not be totally disabled; much of the best work of life goes on under such disabilities * * *." But the purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act. If there was any work which this Claimant was able to perform, the record fails to disclose it.' Butler v. Flemming, supra, p. 595."

The only reasonable conclusion that can be drawn from the record in this case is that the plaintiff is disabled from engaging in any substantial gainful work which is commensurate with his education, training, experience, and physical and mental capabilities.

Therefore, it is ordered and this does order that defendant's motion for summary judgment be and the same is hereby denied.

It is further ordered that the final decision of the Secretary is reversed, and the cause is remanded to the Secretary with directions that plaintiff be granted a period of disability and disability insurance benefits from January 10, 1960.

Done and dated this 25th day of January, 1965.