Andres **MENDEZ GONZALEZ**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. No. 49–69.

United States District Court, D. Puerto Rico.

June 15, 1970.

**1024**

Frank Torres, Ponce, P. R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

### ORDER and MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

Claimant has brought this civil action against the Secretary of Health, Education and Welfare to set aside the final decision which held that he met the disability requirements from June 30, 1963 through July 31, 1967. The decision of the Appeals Council modified that of the Hearing Examiner which had entitled Andrés Méndez González to a period of disability from June 30, 1963 to May 31, 1966.

■ Before entering upon a full review of the evidence and the findings of the Appeals Council granting claimant a closed period of disability ending July 31, 1967, the Court shall consider other relevant factors such as age, education, background and work history. This man, born on April 20, 1918, has a second grade schooling [1] and a work history of heavy manual labor which dates back to his boyhood years. Although initially stating that "the majority of * * * [his] work history had been working the fields and working the sugarcane," he later added that he also carried out the tasks of construction work and sanding mannequins. A disability interview made on January 10, 1967 discloses that claimant "feels bored and tired of doing nothing and would like to get well and return to work" (Tr. p. 103). Although specifically concluding that Méndez was unable to resume his former work activities, the vocational expert listed innumerable factory jobs in the shoe, bottling and tobacco industries which he could conceivably perform. These were described as light, sedentary jobs which allowed for shifting of his position.[2] The vocational consultant indicated that his prior jobs required only average manual visual coordination and below average intelligence.

He was working at sanding mannequins in 1961 when he fell on the stairway and injured his back.[3] Continued work efforts were made until 1964 when his worsened back condition compelled him to undergo surgery. A myelogram made on January 14, 1964 was consistent with herniated vertebral disc. A hemilaminectomy and excision of herniated nucleus propulsis at the L–5, S–1 interspace was performed on January 15, 1964 at the Knickerbocker Hospital, New York, by Dr. Robert W. Schick, a neurosurgeon. He was 47 years old at the time. A report of the operation states that: "The patient appeared to tolerate the procedure well and was sent to the Recovery Room in good condition" (Tr. p. 141). Following laminectomy, however, he continued experiencing pain and did not

---

1. Questioned at the hearing as to his ability to read and write, he answered: "I can sign my name not too well, read I can hardly do."

2. These excerpts from the transcript show that the hearing examiner erroneously ignored the age factor in the evaluation of claimant's employability, Janek v. Celebrezze. 336 F.2d 828 (3rd Cir., 1964). "Q. Well, is there anything that he can do?

A. Yes * * * Well, there are a lot of light and sedentary factory jobs which he could do physically given the residuals. Although to be perfectly blunt he would have a hard time at age. * * *

Q. Forget about the age, forget about the fact that he'd have a hard time getting it. I'm not concerned with that."

3. This accident occurred in New York.

return to work. On January 10, 1967 he applied for disability insurance benefits in Puerto Rico and described his impairment as "herniated disc lumbar region" (Tr. p. 97). Plaintiff indicated in the written application form that he was "able to go outside but only with help of device."

This application was denied at the outset by the Bureau of Disability Insurance of the Social Security Administration on the basis that claimant could perform work requiring light to moderate exertion (Tr. pp. 110–111; 114–115). Not satisfied with the disability determination in his case, plaintiff then requested a hearing before an examiner. The decision of the Hearing Examiner held that Andrés Méndez was entitled to benefits from June 30, 1963 to May 31, 1966. Once more plaintiff appealed to a higher administrative level and the Appeal Council granted his "request for review to consider whether the evidence established that the claimant was under a disability after May 31, 1966" (Tr. p. 5). The Appeals Council decision[4] contains a most significant paragraph which served as basis for modifying the Examiner's prior decision, where it is asserted that:

> "The Appeals Council, after carefully reviewing the medical evidence, disagrees with that conclusion. Two separate physicians, both specialists, who examined the claimant in March 1966, found clinical signs and evidence to convince them that the claimant was disabled at that time. Several months later, in January 1967, the claimant's physician reported further abnormalities on examination, including restricted range of motion of the low back in all directions, and he expressed the opinion that the claimant was disabled. Although the reports of these physicians do not contain clinical or laboratory findings that unequivocally compel the conclusions which they expressed regarding an ability to function in the world of work, they are positive opinions based upon their examination of the man and are not refuted by evidence of more persuasiveness to the Appeals Council."

The two 1966 medical reports referred to by the Appeals Council are those of Dr. David H. Smith, surgeon and Dr. Robert W. Schick, the neurosurgeon who performed the laminectomy on claimant more than two years before.[5] Both made similar findings that Méndez had a chronic back problem and a post-operative status following laminectomy for a herniated disc. It was their impression that plaintiff was totally disabled. This evidence resulted in a favorable decision for him in the sense that it extended the disability period for another year. However, plaintiff felt he was still incapacitated and was aggrieved by the granting of a closed period of disability which came to an end on July 31, 1967. The Council found the reports of two physicians made in 1967 as "evidence of more persuasiveness" which sustained the conclusion that claimant had recovered sufficiently from his impairments so as to be able to engage in substantial gainful activity.

The controversy in this, as in any Social Security claim, is finally reduced to determining whether substantial evidence in the record supports the final administrative findings complained of. An examination of the 1967 medical reports which were determinative in the termination of benefits reveals that Méndez was examined by Dr. Joseph Brinz, neuro-surgeon, on May 19, 1967 at Ponce, Puerto Rico at the request of Vocational Rehabilitation. He reported a good surgical result and it was his belief that plaintiff was not incapacitated but should avoid heavy work and lifting. Dr. Brinz made the follow-

---

4. The Hearing Examiner's statements as to evidentiary facts before him were incorporated by reference therein.

5. The examination of plaintiff by Dr. Smith was made on March 11, 1966 and that performed by Dr. Schick was on March 14, 1966 according to the reports (Exhibits 14 and 16).

ing significant comment: "It is important to get short summary from hospital regarding operative findings" (Tr. p. 160). Three months later claimant was again examined at Ponce by a pediatrician with subspecialty in neurology, Dr. Winston Ramón Ortiz. At this time he was reported to be "definitely capable of working in a job not requiring walking long distances, stooping or heavy carrying or lifting" (Tr. p. 157). Rehabilitation was recommended.

A full consideration of these two reports leads us to the testimony of Dr. Miguel Pérez Arzola, internist, who served as medical advisor at the hearing. He indicated that the difference between the 1966 and the 1967 reports lies in the fact that there was some clinical improvement in the patient and that leaving out the emotional component he would agree that claimant was not totally disabled. There is a clear contradiction in Dr. Pérez Arzola's testimony as to claimant's capacity to work. Although generally stating that plaintiff could do "some type of work" restricted in kind and amount, he subsequently made the following significant remarks upon further inquiry by counsel:

"Q. Would you say that he is fundamentally qualified to physically perform any labor?

A. No, sir.

Q. Why not?

A. Because he is partially disabled." (Tr. 59)

On January 30, 1968 Dr. Reinaldo J. Carreras, an internist with sub-specialty in neurology, examined plaintiff and his impression was very similar to that reported by Drs. Smith and Schick in 1966, to wit—status post lumbar laminectomy for H.N.P. and chronic low back syndrome.[6] He further stated that: "There seems to be a real disability caused by the old H.N.P. and, or possibly due to the operative procedure (Laminectomy). The degree of this disability was diffi-

cult to be determined on this examination because superimposed conversion reaction and depressive reaction" (Tr. p. 171).

There is no question that this man has suffered from a seriously disabling impairment. When, if ever, this disability disappeared is the particular problem raised by the case at bar. The Appeals Council relied on two 1967 medical reports to sustain its determination of a closed period of disability which continued up to July 1967 and no further. However, a fair review of the evidence discussed reveals that more than two years after undergoing a laminectomy this man was found by a surgeon and the neurosurgeon who operated on him as totally disabled for manual labor. His surgical result was apparently a failure. A year after this he is found to be definitely capable of performing substantial gainful work by a pediatrician whose subspecialty is neurology and by a neuro-surgeon who expressed the importance of obtaining a summary from the hospital regarding operative findings. Claimant testified at the hearing that he lived with pain night and day. The words of Senior Judge McAllister in Davidson v. Gardner, 370 F.2d 803, 823 (6th Cir., 1966) seem especially fitting to the present circumstances:

"  *  *  *  [I]t is the duty of courts to examine meticulously the evidence, no matter how burdensome that duty is, because of the helter-skelter nature of the records in these cases, and not adopt the facile way of disposing of an injured applicant's case by reference to, and reliance upon, the statements of one or two physicians and surgeons who have had more opportunity of examining and treating the applicant, more occasions of making medical reports upon him, and more expertness in diagnosis, as well as upon consideration of the facts reflected in the transcript as a whole."

It is reasonable to conclude that in light of all the facts and of the evidence ac-

6. However, Dr. Carreras also found super-imposed conversion and depressive reactions.

cumulated, the two 1967 medical records which fundamentally served as basis for termination of benefits are insufficient to support the Secretary's findings. A quotation from Professor Jaffe found in the *Davidson* case clearly describes the reason for this:

> "Obviously responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears. Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence."

The "whole fact situation" before us reveals a man who admittedly has suffered from a disabling condition after more than two years of undergoing remedial surgery. There is evidence (Tr. p. 120) in the record that after this he remained under the care of Dr. Schick "whom he sees once in two months." There ought to be other evidence to substantiate the 1967 findings of the two Ponce doctors in the face of the 1966 findings of the New York physicians, one of them having performed the spinal surgery and treated him thereafter, and which findings were the basis for modifying the Examiner's decision and extending the disability period another year.

 Finally, the Secretary, on remand, must bear in mind the fact that age, education, training and work experience are also meaningful factors to be taken into account in reaching a determination of ability to engage in substantial and gainful activity. Janek v. Celebrezze, 336 F.2d 828 (3rd Cir., 1964). These are not to be ignored with a loose remark of no-concern (Tr. p. 83). These are essential elements to be considered in addition to the existence of a physical disability in order to reach a realistic determination. To this end, the administrative authorities must look into the work restrictions faced by plaintiff because of limitations by reason of age, work history and education. The vocational expert listed a number of factory jobs which no matter how simple or routinary require undeniable physical efforts which must not be so burdensome as to render them only theoretically possible. This man's ability to stand, sit and walk distances must also be more clearly delved into as part of the investigation which will take place.

Accordingly, the case is hereby remanded to the Secretary of Health, Education and Welfare for further proceedings not inconsistent with this opinion with the specific instruction that the parties be given the opportunity to amplify the record by further evidence necessary for this court to arrive at a decision in its role of judicial review.

It is so ordered.