AMERICAN CYANAMID
COMPANY, Plaintiff,

v.

GENTEX CORPORATION, Defendant.

Civ. No. 85-0395.

United States District Court,
M.D. Pennsylvania.

March 5, 1986.

Joseph E. Gallagher, Scranton, Pa., for plaintiff.

Jacob Nogi, Scranton, Pa., for defendant.

MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here Defendant's motion for summary judgment. For the reasons stated, it will be denied.

I

THE CASE

By complaint filed March 22, 1985 the Plaintiff claims to be the owner of a number of patents on a "class of compounds" which are designed to absorb a wide band of infrared rays and are used in a variety of lenses in several different ways. The Plaintiff further claims the Defendant has infringed and continues to infringe upon these patents and seeks to enjoin further infringement and to recover damages, costs and attorney's fees.

While other numbered patents are referenced throughout this case, we are concerned here primarily with U.S. Letters Patent No. 3,251,881, issued March 17, 1966; U.S. Letters Patent No. 3,575,871, issued April 20, 1971; U.S. Letters Patent No. 3,484,467, issued December 16, 1969; and U.S. Letters Patent No. 3,670,025, issued June 13, 1972. They are hereinafter referred to as '881, '871, '467 and '025.

The Defendant, in response, argues that the claims under '871 are subject to a statutory bar of a French Patent previously issued on the same invention, and that the claims under '467, '871 and '025 are invalid on account of double patenting or extension of the monopoly of '881 which expired May 17, 1983.

Defendant argues further that because there are no operable facts in dispute, that it is entitled to judgment as a matter of law as to these claims.

II

THE LAW

PATENTS

On the issue of infringement and validity, both sides agree the issue of patent

infringement is a question of fact, *Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 867 (5th Cir.) cert. denied, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973), while the ultimate question of patent validity is one of law, *Bird Provision Co. v. Owens Country Sausage, Inc.*, 568 F.2d 369 (5th Cir.1978). Even when the ultimate issue is a legal one, the conclusions of law must be based on the result of several factual inquiries. See, e.g., *Graham v. John Deere Company of Kansas City*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Control Components, Inc. v. Valtek Inc.*, 609 F.2d 763, 766 (5th Cir.1980); *Parker v. Motorola, Inc.*, 524 F.2d 518, 531 (5th Cir. 1975), cert. denied, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976). See also *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315 (1980).

On the issue of double patenting or illegal continuation, the first question in the analysis is: Is the same invention being claimed twice? 35 U.S.C. § 101 prevents two patents from issuing on the same invention. See, e.g., *In re Boylan*, 392 F.2d 1017, 55 CCPA 1041 (1968). As we have said many times, "invention" here means what is defined by the claims, whether new or old, obvious or unobvious; it must not be used in the ancient sense of "patentable invention," or hopeless confusion will ensue. By "same invention" we mean identical subject matter. Thus the invention defined by a claim reciting "halogen" is not the same as that defined by a claim reciting "chlorine", because the former is broader than the latter. On the other hand, claims may be differently worded and still define the same invention. Thus a claim reciting a length of "thirty-six inches" defines the same invention as a claim reciting a length of "three feet," if all other limitations are identical.... A good test, and probably the only objective test, for "same invention," is whether one of the claims could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention. This is essentially the test applied in *In re Eckle*, 393 F.2d 848, 55 CCPA 1068 (1968).

If the same invention is not being claimed twice, a second question must be asked. The second analysis question is: Does any claim in the application define merely an obvious variation of an invention disclosed and claimed in the patent?

If the answer to the second question is no, there is no double patenting involved and no terminal disclaimer need be filed. If the answer is yes, a terminal disclaimer is required to prevent undue timewise extension of monopoly. *Application of Vogel*, 422 F.2d 438, 57 CCPA 920 (1970).

On the motion, as such, we point out that in order for a moving party to prevail on a motion for summary judgment, he must show (a) that there is no genuine issue as to any material fact, and (b) that he is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*; See *Wright & Miller, Federal Practice and Procedure: Civil Section 2712*. Thus the Court cannot try issues of fact on a Rule 56 motion, but only is empowered to determine whether there are issues to be tried. *Janek v. Celebreeze*, 336 F.2d 828 (3d Cir.1964). Finally, in determining whether an issue of material fact does exist, all inferences must be drawn against the moving party. *See 6 Moore's Federal Practice ¶ 56.04[2]*.

### III

### THE ARGUMENTS

#### A. DEFENDANT'S ARGUMENT

Gleaned from the submissions, the briefs and oral argument, the parties' respective positions are as follows:

The '881 patent is directed to a class of procursor compounds whose immediate and ultimate derivatives are claimed in the '025 and '467 patents, respectively. The '871 patent in turn covers methods of using, or compositions of matter containing, these derivatives. The '881 patent discloses no utility for the compounds claimed therein except in the preparation of the infrared absorbers claimed in the '467 patent in suit or in the '769 patent also owned by plaintiff. This disclosure of utility did not con-

stitute a separate invention, but was the *sine qua non* for patentability of the intermediates.

The infrared-absorbing properties of the aminium and diimonium salts derived from the amino compounds claimed in the '881 patent were, in the words of the court in *In re Higgins*, "the properties and characteristics on which patentability was premised". They were therefore "an essential part of the invention claimed" in the '881 patent. Plaintiff now relies on these very same properties to support the continued enforcement of the '467, '871 and '025 patents, thereby allowing it to dominate the only disclosed use of the compounds claimed in the expired '881 patent and thus extend the monopoly of that patent. Such a position does indeed "shock one's sense of justice", and fully warrants the invalidation of the '467, '871 and '025 patents by this Court.

### B. PLAINTIFF'S ARGUMENT

Initially, claims to the three inventions were included in the same application, Serial No. 333, 728 filed December 26, 1963. Application Serial No. 333, 728 disclosed and claimed a method for absorbing infrared radiation; a method for protecting an object from the effects of infrared radiation; compositions of matter comprising a polymeric material incorporating an aminium salt compound; aminium salt compounds; and hydrocarbyl-substituted phenyl arylenediamine compounds.

The Patent Office declared that these claims recited more than one invention, and required restriction of application Serial No. 333, 728 under 35 U.S.C. § 121 to either a group of claims covering compounds or a group of claims covering methods and compositions of matter, stating:

"The two inventions are different one from the other as the aminium salts of [Claims 10–15] could have utility as an intermediate compound, a therapeutic as noted in Huebner [U.S. Patent No. 2,760,-978] and a rubber additive (Tung) [U.S. Patent No. 2,938,922] in addition to its use as an infrared absorber when em-

ployed with various substrates as disclosed and claimed by applicant."

Claims directed to aminium salt compounds and hydrocarbyl-substituted phenyl arylenediamine compounds were presented in a continuation-in-part application of Serial No. 333, 728, see file history of Serial No. 607,390, filed January 5, 1967, Exhibit N hereto, pp. 37–38. A further restriction between these two inventions was required in an Office action, dated October 22, 1968. The Patent Office declared that the aminium salt compounds and the hydrocarbyl-substituted phenyl arylenediamine compounds must be restricted to separate applications, stating:

"These two inventions are distinct and independent from each other because [the two groups of compounds] are obviously mutually exclusive of each other and because of the dissimilar chemical relationship existing between the compounds..."

The claims drawn to aminium salts were allowed in Serial No. 607,390 and issued in the '467 patent.

The claims drawn to hydrocarbyl-substituted phenyl arylenediamines were carried forward in a divisional application pursuant to 35 U.S.C. § 121, Serial No. 781,973 filed December 6, 1968. These claims were allowed and issued in the '025 patent.

Concurrently with the prosecution of these compound claims, the method and composition of matter claims of Serial No. 333,728 were presented in a continuing application, Serial No. 377,036, filed June 22, 1964, and then in a further continuation-in-part application, Serial No. 617,859 filed February 23, 1967. These claims were allowed and issued in the '871 patent.

Thus, the Patent Office recognized and determined that the parent application, Serial No. 333,728, introduced claims to three inventions, which had to be contained in three different patents, now the patents in suit.

Although French Patent No. 1,398,240 is American Cyanamid's own patent, the possibility of a bar affecting the later-is-

sued '871 patent was first brought to Plaintiff's attention by Defendant in discovery in this action. Complete investigation of the merits of defendant's contention has been hampered because of the unavailability of any record, either in plaintiff's custody or in the permanent records of the Patent Office, of the early applications, Serial No. 377,036 and Serial No. 281,056, in the chain leading to the '871 patent.

However, to obviate any issue with respect to the French patent, plaintiff has requested reexamination and amended the claims of the '871 patent.

As set forth in detail in the request for reexamination, the amended claims of the '871 patent strictly conform in scope to subject matter disclosed in application Serial No. 333,728, filed December 26, 1963, and carried forward in the continuing application Serial No. 617,859, filed February 23, 1967, which issued as the '871 patent.

Plaintiff's argument concludes:

1. Defendant's motion seeking dismissal of the complaint as to original Claims, 1, 4, 7 and 8 of the '871 patent in view of American Cyanamid's French Patent No. 1,398,240 is rendered unnecessary by plaintiff's request for reexamination of the '871 patent filed September 9, 1985. Any certificate of reexamination that issues will include only claims that are unquestionably not barred by the French patent.

2. Defendant's allegations of double patenting raise genuine issues as to material facts which preclude summary judgment.

3. Claim 5 of the '467 patent, Claims 1, 4, 7 and 8 of the '871 patent and Claim 5 of the '025 patent are not a double patenting of the claims of U.S. Patent No. 3,251,881.

## IV

### ANALYSIS

As indicated above, this action involves a "class of compounds", which are designed to absorb a wide band of infrared rays and can be used in products such as lenses in a number of ways.

The Plaintiff here alleges that it has patents covering these inventions that the Defendant has been improperly using. The Defendant essentially is claiming that the Plaintiff should be estopped from alleging patent violation because certain of the patents were secured by presenting fraudulent or misleading information to the patent office which essentially invalidates the patents or at least prevents the Plaintiff from enforcing them. Part of the argument of the Defendant, too, is that a patent was issued by the Government of France on the same compound and that statutory law in the United States prevents an additional patent from being issued once a patent has been issued in any country on the same item.

Further Defendant argues that some of the items in issue are really derivations of the original patent and are not enforceable because it would violate the law that prevents continuous patenting of derivations of an original compound which could be achieved by anyone with reasonable ability in the same art.

Defendant argues that the law provides that at the end of the allotted term the patented concept becomes public property and that to allow succeeding patents which are only extensions or derivations of an original idea would make a mockery out of the concept and would extend one's control over an idea indefinitely.

Working one's way through this case involves an excursion through deep and often murky waters of patent law and patent "talk". In addition to the normal difficulties this area of the law and human endeavor brings, this case involves a number of chemical formulas whose significance and pertinence are contested by the parties.

Demonstrative of this latter reality is the nub of the argument before us—made by the Defendant and disputed by the Plaintiff—that several of the Plaintiff's claimed inventions are only derivations of the original and subject to discovery by anyone reasonably adept in the field. These "inventions" ('881, '871, '467 and '025) are "described" or "defined" by formulas sub-

mitted to this Court for interpretation. (These formulas are attached hereto and marked Exhibits A, B, C and D). Plaintiff argues the formulas show that the various compounds or intermediates are separate and distinct concepts—or inventions—and entitled to separate patenting.

The Defendant argues, to the opposite, that such "concepts" are only the reasonable variations that anyone in the field could have developed, and thus to allow new patents for each would be improper. Each side makes this argument with appropriate and deep expert fervor and ardor.

Likewise the same method is used to convince this Court that '881 encompasses—or does not encompass—all the other "inventions".

One need not be unusually adept or skilled in chemistry or patentability of concepts, to see that this Court is faced with a distinct and unique factual dispute. Resolution of this dispute involves the factual determination of just what each of the formulas mean and the factual dispute as to whether or not these "concepts" are significant individual ideas or merely derivations

of the grandparent patent. To make this latter determination the Court also needs to hear expert factual testimony and expert opinions so that a final balancing of these opinions and resolution of items of credibility can be made.

Traditionally, this aforementioned exercise is not one which can be done within the confines of a summary judgment motion. This is the typical situation where operable facts are certainly in dispute and under such circumstances summary judgment is simply inappropriate.

### EXHIBIT A

*U.S. 3,575,871 (Susi et al)*

10. A composition of matter which provides broad absorption of radiant energy in the near-infrared region consisting essentially of an organic plastic material capable of transmitting visible light having incorporated therein at least about 0.005% by weight of bis(p-dibutylaminophenyl) (N,N-bis(p-dibutylaminophenyl)-p-aminopheny1) aminium hexafluoroantimonate.

[a.k.a., IR 126 composition]

```
Bis(p-dibutylaminophenyl)(N,N-bis(p-
dibutylaminophenyl)-p-aminophenyl)
aminium hexafluoroantimonate
```

### EXHIBIT B

*U.S. 3,670,025 (Susi et al)*

5. N,N,N',N'-Tetrakis(p-dibutylamino-phenyl)-p-phenylenediamine.

$$(C_4H_9)_2N\text{—}\phenyl\text{—}N\text{—}\phenyl\text{—}N\text{—}\phenyl\text{—}N(C_4H_9)_2$$

a.k.a., IR 126 intermediate

EXHIBIT C

*U.S. 3,484,467 (Susi et al)*

5. Bis(p-dibutylaminophenyl) [N,N-bis(p-dibutylaminophenyl)-p-aminophenyl] aminium hexafluoroantimonate.

$$\left( (C_4H_9)_2N\text{—}\phenyl\text{—}N\text{—}\phenyl\text{—}\overset{+}{N}\text{—}\phenyl\text{—}N(C_4H_9)_2 \right) \quad AsF_6^-$$

Bis(p-dibutylaminophenyl)(N,N-bis(p-dibutylaminophenyl)-p-aminophenyl) aminium hexafluoroantimonate; a.k.a., IR 126 compound

EXHIBIT D

*U.S. 3,251,881 (Susi et al)*

4. A compound of the formula

N,N,N',N'-Tetrakis(p-aminophenyl)-p-phenylenediamine; or Bis(p-amino-phenyl)(N,N-bis(p-aminophenyl)-p-aminophenyl amine